The **FIRST NATIONAL BANK OF DENVER, a National Banking Association, Plaintiff-Appellant,**

v.

**T. C. CILLESSEN and Doris M. Cillessen, Defendants-Appellees.**

No. 79CA0124.

Colorado Court of Appeals, Div. II.

Oct. 9, 1980.

As Modified on Denial of Rehearing Nov. 6, 1980.

John Mason, Jr., Denver, for plaintiff-appellant.

Rotole, Owen, Jaunarajs & Walker, Larry L. Grant, Dennis P. Walker, Denver, for defendants-appellees.

Joseph F. Dolan, U. S. Atty., James W. Winchester, Asst. U. S. Atty., Denver, amicus curiae United States of America.

VAN CISE, Judge.

Plaintiff, the First National Bank of Denver (the bank), appeals the judgment, entered at the close of its case in a trial to the court, dismissing all of its claims for recovery of deficiencies on four promissory notes after foreclosure and sale of collateral. We affirm in part and reverse in part.

All notes were corporate obligations. One note was executed by Summit Concrete Co. (Summit Concrete) and was co-signed by both defendants. The other three notes were executed by BDF Construction Corp. (BDF) and were co-signed by defendant T. C. Cillessen only. All were secured by all of the respective company's machinery, equipment, inventory, and accounts receivable. The notes became delinquent. The bank foreclosed on, took possession of, and disposed of the collateral at private sale.

Alleging that it had not received from disposition of the collateral the full amount owing on the notes, the bank commenced this action for the deficiencies against the co-makers, *i.e.*, against both defendants on the one Summit Concrete note and against T. C. Cillessen only on the three BDF notes. The execution of the notes, that they were in default, and the amount of the unpaid balances prior to the disposition of the collateral were not disputed. However, among other defenses, defendants alleged delivery of collateral in complete satisfaction of the indebtedness, failure to give notice of disposition of the collateral, failure to dispose of the collateral in a commercially reasonable manner, and failure to account for or to apply the proceeds to satisfaction of the indebtednesses.

At the conclusion of the bank's case, the trial court dismissed the action as to all of the notes. The grounds for dismissal were that the bank had not given notice of the sales of the collateral to the defendants pursuant to § 4-9-504(3), C.R.S. 1973, and that it had not satisfied its burden of proof as to the value of the collateral sold.

## I.

On appeal, the bank contends that, since the defendants were not the owners of the collateral and had not signed the security agreements under which the collateral was taken, they were not "debtors" and were specifically excluded by statute from any entitlement to notice. It argues that, since no notice to the defendants was required, the bank was entitled to a deficiency judgment once proof under § 4–3–307, C.R.S. 1973, was given. We do not agree.

Section 4–9–504(3), C.R.S. 1973, specifies in pertinent part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts .... [R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale ... is to be made shall be sent by the secured party to the debtor ..."

Section 4–9–105(1)(d), C.R.S. 1973, provides:

"Debtor means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights, or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term debtor means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires."

The issue here, a matter of first impression in Colorado, is whether the term "debtor" in § 4–9–504(3), C.R.S. 1973, includes an obligor who does not own the collateral.

The majority of jurisdiction addressing this precise question have held that accommodation makers, guarantors, and other obligors who will be called upon to pay deficiencies are debtors within the meaning of Article 9 and are entitled to the notice required by UCC § 9–504(3). *Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966); *Savings Bank of New Britain v. Booze*, 34 Conn.Super. 632, 382 A.2d 226 (1977); *Barnett v. Barnett Bank of Jacksonville*, 345 So.2d 804 (Fla. Dist.Ct.App.1977); *Commercial Discount Corp. v. Bayer*, 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926 (1978); *Camden National Bank v. St. Clair*, 309 A.2d 329 (Me. 1973); *De Lay First National Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976); *T & W Ice Cream, Inc. v. Carriage Barn, Inc.*, 107 N.J.Super. 328, 258 A.2d 162 (1969); *Chase Manhattan Bank v. Natarelli*, 93 Misc.2d 78, 401 N.Y. S.2d 404 (1977); *FMA Financial Corp. v. Pro-Printers*, 590 P.2d 803 (Utah 1979); *Rushton v. Shea*, 423 F.Supp. 468 (Del.1976).

Only a few courts have taken the opposite view, and the validity of their holdings is questionable. *See Brinson v. Commercial Bank*, 138 Ga.App. 177, 225 S.E.2d 701 (1976) (contrary to *First National Bank & Trust Co. v. Kunes*, 230 Ga. 888, 199 S.E.2d 776 (1973)); *A. J. Armstrong Co. v. Janburt Embroidery Corp.*, 97 N.J.Super. 246, 234 A.2d 737 (1967) (specifically not followed in the later *T & W Ice Cream, supra*); *New Haven Water Co. Employees Credit Union v. Burroughs*, 6 Conn.Cir. 709, 313 A.2d 82 (1973) (not followed in *Booze, supra*).

We elect to follow the majority of jurisdiction and, accordingly, hold that accommodation co-makers and those others who will be called upon to pay deficiencies are "debtors" within the meaning of §§ 4–9–105(1)(d) and 4–9–504(3), C.R.S. 1973, and are entitled to notice of the disposition of the collateral.

The purpose of the notice requirement is to give all persons having interests in the collateral or facing possible deficiency claims an opportunity to protect their interests and to utilize all practicable means of reducing or eliminating their potential liability. It gives them the chance to pay the debt and thus redeem the property, to challenge any aspect of the disposition before it is made, and to seek out persons who might be interested in purchasing the collateral, to the end that the property not be sacrificed by sale at less than market value and the

deficiency, if any, be minimized. *See Chase Manhattan Bank v. Natarelli, supra; Rushton v. Shea, supra.* The provisions for notice should be construed and applied in a manner to effectuate that purpose.

So viewed, the language of the statute supports the majority view. Section 4–9–105(1)(d) does not require the "debtor" to be the owner or have rights in the collateral. The debtor is only required to be an "obligor in any provision dealing with the obligation." *Chase Manhattan Bank v. Natarelli, supra.* Section 4–9–504(3) deals with both the collateral and the obligation and, accordingly, the term "debtor" includes both the owner of the collateral and the obligor when, as here, they are not the same person. *Commercial Discount Corp. v. Bayer, supra.*

■ Contrary to the bank's contention, since defendants were debtors within the provisions of the UCC, they were entitled to the same defenses as the owners of the collateral.

## II.

■ The bank next asserts that, even if the defendants were debtors and entitled to notice, they were not entitled to a separate notice before each sale. Also, it claims defendant T. C. Cillessen knew of the sales, and his knowledge may be imputed to his wife, defendant Doris M. Cillessen. We disagree.

The security agreements required at least five days prior written notice of the time after which private sales would occur and, as found by the trial court, with support in the record, no such notice was given to any debtor. This notice may not be waived. Section 4–9–501(3)(b), C.R.S. 1973.

## III.

The bank further contends that the evidence established that the market value of most of the collateral was obtained at the sales, and that the only deficiency in the evidence pertained to a few minor items worth less than $15,000—which amount the bank was willing to credit on the note balances due.

■ Failure to give notice of the disposition of the collateral does not, *ipso facto*, preclude the bank from recovering a deficiency if it can prove the amount thereof. *Community Management Ass'n of Colorado Springs, Inc. v. Tousley*, 32 Colo.App. 33, 505 P.2d 1314 (1973). However, there is a presumption that the value of the repossessed collateral is equal to the amount of the outstanding debt and that, therefore, there is no deficiency. *Tousley, supra.* In any event, the debtors are entitled to have the market value of the collateral at the time and place of sale offset against any balance due on the indebtedness. *Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co-Alaska, Inc.*, 568 P.2d 1007 (Alaska 1977).

■ If the sales of the collateral had been conducted in accordance with the requirements of the UCC, the amount received at the sales would have been competent evidence of the market value. However, where, as here, because of lack of notice, the sales are not conducted in compliance with the law, the amount received is not evidence of the market value, and the secured party has to prove value by other evidence. *Tousley, supra; Kobuk, supra.*

■ In an effort to rebut the above presumption as to the value of the collateral and to prove deficiencies, the bank relied primarily on testimony as to the proceeds of sale, which under the rule was not competent evidence. Some additional testimony was presented relative to the value of some of the items, but there was no competent evidence offered as to the value of a mobile home, storage sheds, tools, parts, tires, and various miscellaneous items. The court found that the bank had failed to sustain its burden of proof as to all of the items of collateral. That finding, supported by the record, is binding on appeal. *Peterson v. Ground Water Commission*, 195 Colo. 508, 579 P.2d 629 (1978).

Even if the bank had sustained its burden of proof as to the other items, and the court's finding is to the contrary, there was

no competent testimony as to the value of the omitted items. And, absent such evidence, the court could not and cannot make a finding that their value was not more than $15,000 as suggested by the bank.

## IV.

Since this appeal has been decided on the basis of lack of notice and failure to prove the amount of any deficiency, the issues of whether the bank acted in good faith or whether the sale was carried out in a commercially reasonable manner need not be addressed.

## V.

The bank's final contention is that the collateral sold was owned by Summit Concrete and not by BDF, that the complaints concerning the sales of the collateral were not applicable to the claims based on the three notes signed by BDF and T. C. Cillessen, that the bank had made out a prima facie case for deficiency judgments as to those claims, see § 4–3–307, C.R.S. 1973, that no defenses had been established, and, therefore, that those claims should not have been dismissed at that stage in the proceedings. We agree. The record shows that the credits on the BDF notes were a result of payments by the corporation or collections on receivables from debtors of that company and not from sale of collateral.

The judgment of dismissal is affirmed as to the claim based on the Summit Concrete Co. note, reversed as to the claims based on the BDF notes, and the cause is remanded for a new trial as to the claims based on the BDF notes.

SMITH and BERMAN, JJ., concur.