UNITED BANK OF DENVER, a National Banking Association, Plaintiff-Appellee,

v.

Harold G. REED and Jean K. Reed, Defendants-Appellants.

No. 79CA0952.

Colorado Court of Appeals, Div. I.

Aug. 13, 1981.

Rehearing Denied Sept. 3, 1981.

Albert A. Carmosino, Stephen E. Tinkler, Denver, for plaintiff-appellee.

Arkin, McGloin & Davenport, P.C., Michael M. McGloin, Denver, for defendants-appellants.

VAN CISE, Judge.

Defendants, Harold G. and Jean K. Reed, appeal a judgment entered against them and in favor of plaintiff, United Bank of Denver (the bank), for the balance of principal and interest due on a promissory note plus costs and attorney fees. We reverse.

Harold Reed and Paul E. Parsons were general partners in a landscaping business known as P & R Industries. In March 1974, the partnership borrowed $7,000 from the bank, evidenced by a note signed by Reed and Parsons as partners and as co-makers. As described in the contemporaneously executed security agreement, the note was secured by a truck, a custom flat bed trailer, and a scraper. The note and security agreement were renewed by new documents in September 1974.

In July 1974, the partnership borrowed an additional $16,450 from the bank, evidenced by a note signed by Reed and Parsons as partners and as co-makers and secured by a diesel tractor with fork lift attachment. This note and security agreement was renewed in November 1974 by a new note signed for P & R Industries by Reed and Parsons. P & R Industries' accounts receivable were added to the collateral securing the loan.

Both loans were made primarily to obtain the funds to purchase the equipment pledged as collateral thereon. Defendant Jean Reed did not sign any of these notes or security agreements and was not a partner in P & R Industries.

Parsons left Colorado in late 1974 and took the pledged vehicles with him. The notes were then in default. In January 1975, Parsons talked to a bank officer by telephone from South Dakota. As a result, the bank authorized Parsons by letter to dispose of the vehicles "through auction sale in your area," with the understanding that, upon sale, the drafts would be presented to the bank and it would forward title or releases. Accordingly, Parsons sold the tractor in March for $2,500. The proceeds were received by the bank, were applied on the $16,450 note, and the title was forwarded to the South Dakota purchaser.

The trailer was repossessed in May in South Dakota for the bank, and was sold at private sale for $1,300. On receipt of the proceeds, the bank mailed the title for delivery to the purchaser, and applied this amount to the Reeds' new June 1975 note referred to below.

At the request of the bank, on June 6, 1975, Harold and Jean Reed executed a new note for $21,119.21, according to the trial court, "in renewal and extension of the two prior notes." The P & R Industries' notes and the bank's interest in the remaining collateral were assigned to the Reeds.

When the Reeds became delinquent on their note, the bank declared the entire balance due and payable and commenced this action for collection. The Reeds defended primarily on the bases (1) that there was no balance owing and therefore no consideration for the new note and (2) that the bank did not comply with the notice of

sale and commercially reasonable sale requirements of the Uniform Commercial Code (UCC), § 4–9–504, C.R.S. 1973, in disposing of collateral securing the underlying P & R obligations.

The court concluded that the UCC provisions were inapplicable because the bank did not, and the partner Parsons did, conduct the sales and also that Reed had notice under the doctrine that notice to one general partner is notice to all of them. It also found that the Reeds knew of the disposition of the collateral before they signed the June 1975 note. It then entered judgment for the bank.

On appeal, the Reeds contend that the trial court erred in determining that the bank had not disposed of the collateral and that the UCC did not apply. We agree.

After default, the secured party has the *exclusive* right to dispose of the collateral. Section 4–9–504(1), C.R.S. 1973. The bank admitted in its trial data certificate that it had disposed of collateral. The evidence was undisputed that the bank's agent was in a position in January 1974 to repossess the collateral in South Dakota. Instead, on representations by Parsons, the bank authorized Parsons to sell, and the tractor was sold by him. Later, the trailer was repossessed and sold on behalf of the bank by a South Dakota bank. In both instances the bank ratified the sales by forwarding the titles on receipt of the sale proceeds.

■ Harold Reed was subject to personal liability on the P & R Industries notes. Therefore, after default, pursuant to § 4–9–504(3), C.R.S. 1973, he was entitled to "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made . . . ." *First National Bank v. Cillessen*, Colo.App., 622 P.2d 598 (1980).

■ Knowledge of the disposition of the collateral by Parsons at the time of the sales and by the Reeds at time of signing the new note is of no consequence. The security agreements specified that "at least five days prior written notice of the time

and place of any public sale or of the time after which any private sale or other intended disposition thereof is to be made" was reasonable notice. No such notice was given to Reed, and the notice required under § 4–9–504(3) may not be waived. Section 4–9–501(3)(b), C.R.S. 1973; *First National Bank v. Cillessen, supra*.

Since there was no notice prior to sale of the tractor and trailer, it is rebuttably presumed that the value of the collateral sold was equal to the balance owing on the notes. *Community Management Ass'n of Colorado Springs, Inc. v. Tousley*, 32 Colo. App. 33, 505 P.2d 1314 (1973). And, since notice was not given, the amounts received from the sales are not evidence of value. To rebut the presumption, the bank had the burden of proving, by other evidence, the market value of the collateral and that, after application of that amount, there was a balance still owing on the notes. *Cillessen, supra*.

At the trial, in addition to the sale price, there was evidence as to the original purchase price of the tractor ($10,850) and the trailer ($2,511.25) when they were bought in 1974. And notes of telephone conversations between a bank collection department employee and an official at the South Dakota bank were introduced into evidence. However, none of this, without more, is evidence of market value of these items at the time and place of sale. *See Keefe v. Bekins Van & Storage Co.*, 36 Colo.App. 382, 540 P.2d 1132 (1975). Therefore, the presumption stands.

Since the 1975 note was a replacement for the claimed deficiency on the P & R Industries notes, and since there was no deficiency which the Reeds' note replaced, the judgment was improperly entered.

The judgment is reversed, and the cause is remanded with directions to dismiss the action.

COYTE and SMITH, JJ., concur.