## 43177. BRANAN v. EQUICO LESSORS, INC.
### (342 SE2d 671)

MARSHALL, Chief Justice.

This is a suit by the appellee, a creditor of a corporation, against the appellant, an officer of the corporation who had personally guaranteed a corporate debt. The debt was not paid, and the collateral securing the debt was repossessed and liquidated. However, the proceeds of the sale were insufficient to satisfy the debt, and the appellee sued the appellant to recover the deficiency. The appellant complained that he had not received notice of the liquidation sale, although he had waived his right to receive such notice. The trial court partially granted the appellee's motion for summary judgment, ruling that the appellant could not complain of his failure to receive notice of the liquidation sale in view of his waiver. The jury returned a verdict in favor of the appellee. The appellant appealed to the Court of Appeals. This case comes to us upon certified questions submitted by the Court of Appeals in regard to the efficacy of the appellant's waiver of notice.

The "Uniform Commercial Code — Secured Transactions" is found at Chapter 9 of OCGA Title 11. OCGA § 11-9-101 et seq. The provisions concerning default are found in Part 5. OCGA § 11-9-501 et seq.

OCGA § 11-9-504 (1) provides that after default a secured party may sell, lease, or otherwise dispose of the collateral. OCGA § 11-9-504 (3) generally requires that the collateral be disposed of in a "commercially reasonable manner" and that "reasonable notification" of the disposition be given to the "debtor." "Compliance with [OCGA § 11-9-504 (3)] is a condition precedent to recovery of any deficiency between the sale price of the collateral and the amount of the unpaid balance." *Gurwitch v. Luxurest Furniture Mfg. Co.,* 233 Ga. 934, 936 (214 SE2d 373) (1975).

1. In *Barbree v. Allis-Chalmers Corp.,* 250 Ga. 409 (297 SE2d 465) (1982):

"Barbree was in the business of selling farm equipment. In each case he sold equipment to a purchaser who in turn executed and delivered to him a retail installment contract. Each contract granted Barbree a security interest in the equipment to secure the payment of the outstanding indebtedness. Likewise in each case, Barbree, for

value received, assigned the contract 'with full recourse' to Allis-Chalmers. In each case the purchaser defaulted on the contract and the equipment was repossessed by Allis-Chalmers.

"Pursuant to [OCGA § 11-9-504 (3)], Allis-Chalmers gave notice to the defaulting purchasers that the repossessed equipment would be sold. No such notice was given to Barbree. In each case the sale of the equipment failed to yield an amount sufficient to satisfy the underlying indebtedness. Consequently, Allis-Chalmers instituted an action against Barbree and the defaulting purchasers of the equipment to recover the deficiency." 250 Ga. at p. 409.

The question for decision in *Barbree* was whether Barbree was a "debtor" within the meaning of § 11-9-504 (3), thereby being entitled to notice of the sale of the repossessed collateral as a condition precedent to Allis-Chalmers' holding him liable for the deficiency.

OCGA § 11-9-105 (d) defines "debtor" as "the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires."

In *Barbree*, the Court of Appeals held that even though Barbree did "owe payment" of the obligation secured, he was not a "debtor" under § 11-9-504 (3), because that section deals with disposition of collateral after default and the term "debtor" within the meaning of that section is limited to the owner of the collateral.

On certiorari, we reversed. In so holding, we observed that the "ultimate goal" of the notification requirement of § 11-9-504 (3) is to allow the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he will be liable. Since persons situated such as Barbree are liable for any deficiency, we reasoned that, as a matter of policy, they should be entitled to the same notice protection as the owner of the collateral. Accordingly, we held that Barbree was a "debtor" within the meaning of § 11-9-504 (3), since that section incorporates both owners of collateral and other obligors within the definition of debtor "where the context requires," and since the context there so required.

However, in *Barbree* we did hold that it was unnecessary to decide whether Barbree was a guarantor or an endorser. In this regard, we noted that § 11-9-105 (d) specifically names sellers of chattel paper (of which Barbree was one) as among those who may be considered debtors who owe payment or other performance of the obligation secured. Therefore, we held in *Barbree* "that one who is a seller of chattel paper, whether or not he is the owner of the underlying collat-

eral, with full recourse against him in the event of a deficiency is a debtor entitled to notice of the post-default proceedings disposing of the collateral pursuant to [OCGA § 11-9-504 (3)]. *Bank of Forest Park v. Gray,* 159 Ga. App. 42 [(282 SE2d 692) (1981)]; *McNulty v. Codd,* 157 Ga. App. 8 (276 SE2d 73) (1981), and *Brinson v. Commercial Bank,* 138 Ga. App. 177 [(225 SE2d 701) (1976)], are hereby overruled to the extent that they are inconsistent with this opinion." 250 Ga. at p. 412.

2. OCGA § 11-9-501 (3) (b) was not dealt with in *Barbree,* and this section provides that rights of the debtor and duties of the creditor stated in § 11-9-504 (3) generally may not be waived.

In *Bennett v. Union Nat. Bank &c. Co.,* 169 Ga. App. 904 (315 SE2d 431) (1984), the defendants had executed a guarantee agreement guaranteeing payment of their son's obligations to the bank, and the language of the guarantee agreement evinced a waiver of notice by the defendants. The Court of Appeals, on motion for rehearing, construed *Barbree* as holding only that a seller of chattel paper with full recourse against him is a debtor entitled to notice of post-default proceedings disposing of collateral. The Court of Appeals held that such cases as *Twisdale v. Ga. R. Bank,* 129 Ga. App. 18, 21 (198 SE2d 396) (1973); *Dunlap v. C & S DeKalb Bank,* 134 Ga. App. 893, 896 (216 SE2d 651) (1975) and *Vickers v. Chrysler Credit Corp.,* 158 Ga. App. 434, 437 (280 SE2d 842) (1981), as well as the cases cited in *Barbree* as being partially overruled, continued to be "viable authority for the proposition that a guarantor or surety, under the terms of a separate contract, may waive such protection as notice or the right to contest the commercial reasonableness of the disposition of collateral." 169 Ga. App. at pp. 906-907.

In *Bank of Forest Park v. Gray,* supra, the Court of Appeals, citing its earlier decision in *Brinson v. Commercial Bank,* supra, and *McNulty v. Codd,* supra, had held that an endorser of a note is not a "debtor" entitled to notice under the provisions of § 11-9-504 (3). In *Gray,* the Court of Appeals held that although it could construe an endorser as a debtor under § 11-9-105 (d) because the endorser "owes payment" of the note, it would instead follow the view "supported in certain of our sister states" that the meaning of "debtor" under § 11-9-504 (3) is limited to the owner of the collateral. The Court of Appeals recognized that the reason for holding that a guarantor is a debtor entitled to notice of post-default proceedings to liquidate the collateral is that the guarantor is liable for the deficiency. However, the Court of Appeals rejected this reasoning on the ground that it "ignores the fact that in most commercial dealings the endorser or guarantor has waived [as they have in this case] his rights to the collateral by allowing the secured party to release it in whole or in part, even without default. The provisions of [OCGA § 11-9-105 (d)] limit-

ing the definition of 'debtor' to 'owner' in sections dealing with collateral anticipates this fact." 159 Ga. App. at p. 43. This was the sole issue addressed in *Gray*.

In *McNulty v. Codd*, supra, Codd had signed a limited written guarantee personally guaranteeing payment of a note, which evidenced an indebtedness for payment of stock which had been purchased by a corporation wholly owned by Codd. In Division 1 of the *Codd* opinion, the Court of Appeals held that a guarantor is not a debtor entitled to notice under § 11-9-504 (3).

In *Brinson v. Commercial Bank*, supra, Brinson executed an instrument guaranteeing payment of an indebtedness incurred by a corporation of which he was president. In Division 1 of the *Brinson* opinion, the Court of Appeals held that "there is nothing shown in the Uniform Commercial Code requiring such notice to be given to a guarantor." 138 Ga. App. at p. 178 (1).

3. In *Clay v. Presidential Financial Corp.*, 175 Ga. App. 226 (2) (332 SE2d 924) (1985), the Court of Appeals followed the *Bennett* holding that a guarantor is not a debtor under § 11-9-504 (3) and, thus, may waive notice of the sale liquidating the collateral.

In *Pollard v. Trust Co. Bank*, 175 Ga. App. 510 (3) (333 SE2d 642) (1985), in which this court denied certiorari, the Court of Appeals, in reliance on *Bennett*'s interpretation of *Barbree*, held that since a guarantor is not a debtor under § 11-9-504 (3), he may waive the defense of commercial unreasonableness in the disposition of the collateral securing the indebtedness. However, as noted in Division 2 of the *Pollard* opinion, 175 Ga. App. at p. 511, the evidence there showed that the guarantor had entered into a post-default agreement in regard to the liquidation sale. In this regard, although OCGA § 11-9-501 (3) (b) does provide that rights given to the debtor and duties imposed on the creditor generally may not be waived, this section goes on to provide that "the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable." Similarly, OCGA § 11-9-504 (3) provides that after default the debtor may sign "a statement renouncing or modifying his right to notification of [the liquidation] sale." *GEMC Federal Credit Union v. Shoemake*, 151 Ga. App. 705 (3) (261 SE2d 443) (1979).

4. *Reeves v. Habersham Bank*, 254 Ga. 615 (331 SE2d 589) (1985), involved a guarantee agreement contained in an instrument separate and apart from the note the payment of which was guaranteed. The maker of the note defaulted thereon, and collateral securing payment of the indebtedness was liquidated and sold. In a suit by the obligee against the guarantors, they complained that they were not given notice of the liquidation sale under § 11-9-504 (3). In *Reeves*, a plurality of this court, looking to the purpose of requiring notice to

the debtor as enunciated in the *Barbree* decision as well as similar decisions of other courts, held "as do a majority of jurisdictions, that a guarantor is a debtor within the meaning of OCGA § 11-9-504 (3). [Cits.]" 254 Ga. at p. 622 (4).

5. In this case, the Court of Appeals has stated that "[b]ased upon the foregoing, it is unclear as to the extent to which current law recognizes a pre-default 'waiver' to be a viable post-default issue as between a secured party and a guarantor." As a result, the Court of Appeals has requested instructions from this court upon the following question:

"1) Under *Reeves*, supra, is the mere status of one as the 'guarantor' of an indebtedness determinative as to the legally non-binding effect of his asserted pre-default waiver of the requirements of OCGA § 11-9-504 (3)? Cf. *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 133 (263 SE2d 138) (1980).

"2) Or, are the terms of a guarantor's pre-default agreement fully enforceable against him, even to the extent of waiving the requirements of OCGA § 11-9-504 (3)? *Bennett*, supra; *Clay*, supra; *Pollard*, supra."

6. As held in Division 4 of the *Reeves* opinion, the *Barbree* rationale logically compels the holding that a guarantor, under a separate contract there, is a debtor under § 11-9-504 (3).

In the *Barbree* case, we could have been more precise in our holding by stating that *Bank of Forest Park v. Gray*, supra, was overruled; that Division 1 of *Brinson v. Commercial Bank* was disapproved; that Division 1 of *McNulty v. Codd*, supra, was disapproved; and that *Brinson* and *McNulty* were overruled to the extent that they were inconsistent with *Barbree*. We now hold that Division 2 of *Clay v. Presidential Financial Corp.*, and Division 3 of *Pollard v. Trust Co. Bank*, supra, are disapproved, and these decisions are overruled to the extent that they are inconsistent with *Barbree*.

7. Accordingly, the certified question is answered as follows: Under the holding in Division 4 of *Reeves* (as well as *Barbree*, its progenitor), the status of one as the "guarantor" of an indebtedness is determinative as to the legally non-binding effect of his pre-default waiver of the requirements of § 11-9-504 (3).

*Certified question answered. All the Justices concur.*

DECIDED MAY 7, 1986.

*Charles J. Reich*, for appellant.
*Katz & Fox, Keith A. Royal*, for appellee.