Virginia MAY, Petitioner,

v.

The WOMEN'S BANK, N.A.,
Respondent.

No. 89SC449.

Supreme Court of Colorado,
En Banc.

March 25, 1991.

O'Connor & Hannan, Paul G. Goss, Marian L. Carlson, Denver, for petitioner.

Fowler & Schimberg, P.C., Daniel M. Fowler, Terrence P. Murray, Denver, for respondent.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *May v. The Women's Bank*, No. 87CA1852 (Colo.App. June 1, 1989) (not selected for official publication), the Court of Appeals held that by executing an unconditional guaranty petitioner Virginia May waived the right provided by section 4-9-504(3) of the Colorado Uniform Commercial Code (the Code) to challenge the disposition of collateral by respondent The Women's Bank (the Bank) on the ground that the Bank failed to dispose of the property in a commercially reasonable manner. Having granted May's petition for certiorari to review that conclusion, we reverse and remand with directions.

I

In 1983 and 1984, May was the president and principal shareholder of the LaBoca chain of retail clothing stores. During that period of time LaBoca entered into a series of financial transactions with the Bank. In connection with those transactions, the

Bank obtained a security interest in LaBoca's inventory, accounts receivable, furniture, fixtures and equipment. In addition, May executed a continuing guaranty in which she personally "guarantee[d] absolutely and unconditionally" the payment of all debts of LaBoca to the Bank. May also executed two promissory notes and deeds of trust in favor of the Bank against properties she owned. In October 1984, all of LaBoca's debts to the Bank were consolidated into a single promissory note secured by LaBoca's assets, the guaranty and the two deeds of trust on May's properties.

In June of 1985, LaBoca filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101–1174 (1988). The Bank obtained permission from the bankruptcy court to replevy and liquidate LaBoca's assets. After disposing of those assets, the Bank commenced foreclosure actions under the May deeds of trust to recover a claimed deficiency. May then instituted this action, alleging that the Bank's negligence in failing to conduct the sale of LaBoca's assets in a commercially reasonable manner, as required by section 4–9–504(3) of the Code, was the cause of any deficiency owed to the Bank.[1]

The Bank filed a motion for summary judgment, asserting that uncontroverted facts established that by executing the continuing guaranty May had waived any right she might have had to rely upon the Code's provisions concerning the disposition of collateral. The trial court granted the Bank's motion, and the Court of Appeals affirmed the trial court's judgment.

## II

May contends that the Code prohibits a guarantor from waiving the right to insist upon disposition of collateral in a commercially reasonable manner. The Bank asserts that the Code's provision prohibiting a debtor from waiving such right is not applicable to a guarantor of a secured transaction. We agree with May.

### A

Section 4–9–504(3) of the Code provides specific protections to debtors with respect to the disposition of property pledged to secure a debt, as follows:

Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale....

§ 4–9–504(3), 2 C.R.S. (1973 & 1990 Supp.).[2] This section requires a secured party to provide a debtor with reasonable notice of any disposition of collateral after default unless the debtor, after such default, spe-

---

1. According to the parties' briefs, LaBoca's claim against the Bank for a commercially unreasonable sale was purchased by the Bank from the trustee in bankruptcy in exchange for the Bank's waiver of any deficiency claim against LaBoca.

2. Although the Code supplies no definition of a "commercially reasonable sale," § 4–9–507(2) furnishes some guidance. That section contains the following pertinent language:

   The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner....

§ 4–9–507(2), 2 C.R.S. (1973).

cifically, knowingly and in writing releases the creditor from such obligation. *Burdick v. Tucker,* 780 P.2d 34 (Colo.App. 1989); *United Bank v. Reed,* 635 P.2d 922 (Colo.App.1981). The section also expressly requires a creditor to dispose of collateral in a commercially reasonable manner. *Cooper Invs. v. Conger,* 775 P.2d 76 (Colo. App.1989).

■ The creation of these obligations of creditors affords debtors with corresponding rights. The Code contains the following pertinent provisions with respect to a debtor's right to require that collateral be disposed· of in a commercially reasonable manner:

> To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral (subsection (3) of section 4–9–504 and section 4–9–505) ... but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:
>
> . . . .
>
> (b) Subsection (3) of section 4–9–504 and subsection (1) of section 4–9–505 which deal with disposition of collateral. . . .

§ 4–9–501(3), 2 C.R.S. (1973 & 1990 Supp.). These provisions prohibit a debtor from releasing a secured party from the obligation to dispose of collateral in a commercially reasonable manner. *Conger,* 775 P.2d at 80. While the Code authorizes waiver of the right to receive reasonable notice of the disposition of collateral after default, it prohibits waiver of the right to demand a commercially reasonable disposition of the collateral.

This distinction emphasizes the significance of the requirement in section 4–9–504(3) that collateral be disposed of in a commercially reasonable manner. To assure confidence in the integrity and fairness of such transactions, debtors, creditors and third party purchasers must all be able to assume that the collateral will not be disposed of in an unreasonable manner. A contrary rule would encourage inequitable, collusive and fraudulent manipulations of sales of collateral by creditors, third parties and debtors.

The obligations and rights established by the· above-quoted provisions of the Code further several additional public policy goals. Requiring a creditor to give a debtor reasonable notice of any disposition of collateral permits the debtor to pursue alternative means to ensure satisfaction of the debt, promotes economic efficiency, and tends to reduce the potential deficiency for which the debtor might be liable. *First Nat'l Bank v. Cillessen,* 622 P.2d 598, 600–01 (Colo.App.1980). In recognition of the fact that furtherance of these policies are central goals of the Code, our Court of Appeals has determined that a creditor's failure to fulfill either of· these duties creates a presumption that upon default the value of the collateral is to be measured by the amount of the balance of the debt and that, absent proof to the contrary, such creditor is not entitled to any deficiency judgment against the debtor. *Conger,* 775 P.2d 76 (commercially unreasonable sale); *Reed,* 635 P.2d 922 (failure to give notice).

### B

■ The Bank does not challenge the foregoing legal principles. The Bank contends, however, that as a guarantor rather than a debtor, May is not prohibited from waiving her right to require disposition of the collateral in a commercially reasonable manner. We do not agree with this argument.

The term "debtor" is defined by the Code as follows:

> "Debtor" means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the article dealing with the collateral, the obligor

in any provision dealing with the obligation, and may include both where the context so requires....

§ 4–9–105(1)(d), 2 C.R.S. (1973 & 1990 Supp.). In *First National Bank v. Cillessen,* 622 P.2d 598 (Colo.App.1980), the Court of Appeals considered the question of whether a co-maker of a corporate note should be deemed a debtor for purposes of section 4–9–504(3)'s requirement of notice after default. Relying in part on the broad definition of the term "debtor" contained in section 4–9–105(1)(d) of the Code, the court answered that question in the affirmative. The court noted that all persons who might ultimately be determined liable for any deficiency in a loan transaction have equally strong interests in minimizing the extent of their potential liabilities. *Cillessen* at 600–01.

Questions of whether a guarantor should be deemed a debtor for purposes of state commercial code provisions requiring notice and commercially reasonable disposition of collateral and whether such a guarantor is prohibited from waiving the rights to require reasonable notice after default and commercially reasonable disposition of collateral have been addressed by many courts. Almost all of those courts have answered such questions affirmatively. *United States v. Kelley,* 890 F.2d 220 (10th Cir.1989) (guarantor may not waive Kansas commercial code requirement of commercially reasonable disposition of collateral); *Ford Motor Credit v. Lototsky,* 549 F.Supp. 996 (E.D.Pa.1982) (guarantor is debtor for purposes of Pennsylvania commercial code and may not waive requirement of commercially reasonable disposition of collateral); *Prescott v. Thompson Tractor,* 495 So.2d 513 (Ala.1986) (guarantors are debtors for purposes of Alabama commercial code and may not waive protections afforded debtors); *Norton v. National Bank,* 240 Ark. 143, 398 S.W.2d 538 (1966) (guarantor is debtor for purposes of Arkansas commercial code and may not, prior to default, waive reasonable notice of disposition of collateral); *Branan v. Equico Lessors,* 255 Ga. 718, 342 S.E.2d 671 (1986) (guarantor is debtor for purposes of Georgia commercial code and may not, pri-

or to default, waive right to reasonable notice of disposition of collateral); *McEntire v. Indiana Nat'l Bank,* 471 N.E.2d 1216 (Ind.App.1984) (guarantors entitled to all protections afforded debtors under Indiana code); *Shawmut Worcester County Bank v. Miller,* 398 Mass. 273, 496 N.E.2d 625 (1986) (guarantor is debtor for purposes of Massachusetts commercial code and may not waive requirement of commercially reasonable disposition of collateral); *Chemlease Worldwide v. Brace, Inc.,* 338 N.W.2d 428 (Minn.1983) (guarantor is debtor for purposes of Minnesota commercial code and may not waive right to reasonable notice); *Borg–Warner Acceptance v. Watton,* 215 Neb. 318, 338 N.W.2d 612 (1983) (guarantor is debtor for purposes on Nebraska Code and may not, prior to default, waive right to reasonable notice of disposition of collateral). *See also* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code,* § 4.8[7][f] (1980 and 1987 Cum. Supp.); J. White & R. Summers, *Uniform Commercial Code,* § 25–12 (3d ed. 1988).

The majority rule recognizes that the interests of guarantors and debtors in matters affecting the disposition of collateral are substantially similar. In addition, the rule encourages guarantors to participate in commercial transactions, thus facilitating the creation of flexible loan arrangements. These are important policies the Code was designed to accomplish.

It is also noteworthy that a guarantor who pays a creditor obtains a right of subrogation of all rights the creditor has against the debtor, including the creditor's right to dispose of collateral. *See, e.g., Allen v. See,* 196 F.2d 608 (10th Cir.1952); *Duncan v. Guillet,* 62 Colo. 220, 161 P. 299 (1916); *Behlen Mfg. v. First Nat'l Bank,* 28 Colo.App. 300, 472 P.2d 703 (1970). Several courts have indicated that non-waivable defenses established by commercial codes are available to a debtor in a reimbursement action instituted by a guarantor who has paid or been adjudicated liable for a deficiency. *See United States v. H & S Realty,* 837 F.2d 1 (1st Cir.1987); *First Nat'l Park Bank v. Johnson,* 553 F.2d 599

(9th Cir.1977); *Mutual Fin. v. Politzer*, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970). A rule requiring a guarantor who has paid a deficiency to dispose of collateral in a commercially reasonable manner, but denying that same guarantor the irrevocable right to insist that the creditor adhere to the same standard, would encourage creditors to dispose of collateral in commercially unreasonable ways and avoid any sanctions for such conduct by seeking recovery for the deficiency solely from the guarantor.

Further support for the adoption of the majority rule is found in the guidelines for construction set forth in the Code. The official comment to the introductory language of section 4–9–101 provides that where distinctions are necessary they should be made "along functional rather than formal lines" and that "[e]xcept for procedure on default, freedom of contract prevails between the immediate parties to the security transaction." § 4–9–101, 2 C.R.S. comment (1973). This provision emphasizes that procedures to be followed after a default has occurred are treated differently than other procedures authorized by the Code.

Section 4–1–103 of the Code provides, in pertinent part: "[u]nless displaced by the particular provisions of this title, the principles of law and equity ... shall supplement its provisions." § 4–1–103, 2 C.R.S. (1973). Section 4–1–102 of the Code describes the rules of construction to be applied throughout the Code in the following pertinent language:

> **Purposes—rules of construction—variation by agreement.** (1) This title shall be liberally construed and applied to promote its underlying purposes and policies. (2) [which include] (a) [t]o simplify, clarify, and modernize the law governing commercial transactions; (b) [t]o permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; (c) [t]o make uniform the law among the various jurisdictions.

§§ 4–1–102(1) and –102(2), 2 C.R.S. (1973 & 1990 Supp.). Finally, section 4–1–102(3) of the Code states:

> The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title, and except that the obligations of good faith, diligence, reasonableness, and care prescribed by this title may not be disclaimed by agreement, but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

§ 4–1–102(3), 2 C.R.S. (1973). These provisions further emphasize the fact that the Code should be interpreted to promote good faith conduct by all parties to commercial transactions.

In the present case, May contends that the Bank's sale of LaBoca's assets was conducted in a commercially unreasonable manner. Her claim alleges a breach of the Bank's duty of care. As provided by section 4–1–102(3), "the obligations of good faith, diligence, reasonableness, and care prescribed by this title may not be disclaimed by agreement...." *Id.* A waiver of the requirement of a commercially reasonable sale would be tantamount to a waiver of the obligations of good faith, reasonableness and care—a disclaimer that is prohibited by sections 4–1–102(3) and 4–9–504(3). *See* Note, *The Waiver of Defenses by Guarantors in Guaranty Contracts and the Nonwaiver Provisions of the Uniform Commercial Code*, 5 Vt.L.Rev. 73 (1980).

The bank relies upon several cases it asserts support its contention that a guarantor may waive the requirement of a commercially reasonable disposition of the collateral. Almost all of the cases cited by the Bank reflect decisions of federal courts in circumstances requiring application of the law of the forum state to commercial transactions involving the federal Small Business Administration. The federal court was thus required to speculate about the applicable state rule of law because the forum state had not yet adopted any rule. Most of those decisions have been undermined by subsequent state court appellate

decisions announcing a rule contrary to the rule proposed by the federal court.[3]

The balance of the federal cases relied upon by the Bank arise in jurisdictions wherein state appellate courts appear not to have addressed the question.[4] The Bank also relies upon two decisions of the Georgia Court of Appeals, *Bennett v. Union Nat'l Bank,* 169 Ga.App. 904, 315 S.E.2d 431 (1984), and *Vickers v. Chrysler Credit Corp.,* 158 Ga.App. 434, 280 S.E.2d 842 (1981). However, the continuing validity of those decisions is doubtful in view of the decision of the Georgia Supreme Court in *Branan v. Equico Lessors,* 255 Ga. 718, 342 S.E.2d 671 (1986). In *Branan,* the Georgia Supreme Court held that a guarantor is a debtor whose pre-default waiver of the requirements of Georgia Code § 9–504(3) is non-binding. *Branan,* 342 S.E.2d at 674.

Based on the language and structure of the Code, the policy objectives it seeks to achieve and the reasoning underlying those decisions illustrative of the majority rule, we conclude that a guarantor is entitled to the rights established by sections 4–9–501(3) and 4–9–504(3) of the Code, including the non-waivable right to require a creditor to dispose of collateral in a commercially reasonable manner. As one noted commentator has observed, "[a]ny other rule would encourage creditor misbehavior in the holding of a foreclosure sale, since the creditor would be safe in the knowledge that the guarantor would pick up the tab for any deficiency." B. Clark, *The Law of Secured Transactions Under the Uniform*

**3.** *Compare United States v. Kurtz,* 525 F.Supp. 734 (E.D.Pa.1981) (applying California law) *with American Nat'l Bank v. Perma–Tile Roof Co.,* 200 Cal.App.3d 889, 246 Cal.Rptr. 381 (1988); *United States v. McAllister,* 661 F.Supp. 1175 (E.D.N.Y.1987) (applying New York law) *with Marine Midland Bank v. Kristin Intern. Ltd.,* 141 A.D.2d 259, 534 N.Y.S.2d 612 (4 Dept. 1988) (*but see First City Div. of Chase Lincoln First Bank v. Vitale,* 123 A.D.2d 207, 510 N.Y. S.2d 766 (1987) (SBA case holding that guarantor may waive right to commercially reasonable disposition)); *United States v. Kukowski,* 735 F.2d 1057 (8th Cir.1984) (applying North Dakota law) *with Dakota Bank & Trust v. Grinde,* 422 N.W.2d 813 (N.D.1988); *United States v. Meadors,* 753 F.2d 590 (7th Cir.1985), and *United States v. Lair,* 854 F.2d 233 (7th Cir.1988) (applying Indiana law) *with McEntire v. Indiana Nat'l Bank,* 471 N.E.2d 1216, 1224–25 (Ind.App. 1984) (not cited in *Meadors* or *Lair*).

It may be that the inconsistencies between early federal decisions and later state decisions are explainable in part by the fact that in the federal cases the Small Business Administration was the plaintiff/creditor. *See* B. Clark, *U.C.C. Survey: Secured Transactions,* 42 Bus.Law. 1333, 1343 n. 38 (1987). As the Tenth Circuit Court of Appeals stated in *United States v. Kelley,* 890 F.2d 220 (10th Cir.1989), "[the] alignment of cases suggests the possibility that a majority of the federal courts are not adopting any particular state's law in these cases, however they characterize their decision, but are instead merely adopting the text of the Uniform Commercial Code and attempting to create a uniform federal interpretation of its provisions." *Id.* at 224.

**4.** In Illinois, Kansas, Maine, Montana and New Mexico appellate courts apparently have not yet determined whether a guarantor may waive

commercial code provisions prohibiting waiver of the right to require a commercially reasonable disposition of collateral. *See National Bank v. Pearson,* 863 F.2d 322 (4th Cir.1988) (non-SBA case, applying Maryland law); *United States v. H & S. Realty,* 837 F.2d 1 (1st Cir.1987) (SBA case, applying Maine law); *United States v. New Mexico Landscaping,* 785 F.2d 843 (10th Cir.1986) (SBA case, applying New Mexico law); *United States v. Lattauzio,* 748 F.2d 559 (10th Cir.1984) (SBA case, applying New Mexico law); *First Nat'l Park Bank v. Johnson,* 553 F.2d 599 (9th Cir.1977) (non-SBA case, applying Montana law); *United States v. Crispen,* 622 F.Supp. 75 (N.D.Illinois 1985) (SBA case, applying Illinois law); *United States v. Frey,* 708 F.Supp. 310 (D.Kan.1988) (SBA case, applying Kansas law); *United States v. Dehaven,* 703 F.Supp. 414 (D.Md.1989) (SBA case, applying Maryland law); *United States v. Hanson,* 649 F.Supp. 100 (D.Me.1985) (SBA case, applying Maine law); *National Acceptance v. Wechsler,* 489 F.Supp. 642 (N.D.Ill.1980) (non-SBA case, applying Illinois law).

It should be noted that in *United States v. Kelley,* 890 F.2d 220 (10th Cir.1989), the Tenth Circuit Court of Appeals determined that "the Kansas Supreme Court would hold that guarantors are to be treated as debtors under Kan.Stat. Ann. §§ 84–9–504(3) and 84–9–501(3), and would not be permitted to waive the commercial unreasonableness defense...." *Kelley* at 224. This decision casts doubt upon the vitality of *United States v. Frey.* It is also noteworthy that in *Walter E. Heller & Co. v. Wilkerson,* 627 P.2d 773 (Colo.App.1981), our Court of Appeals concluded that a guarantor must be deemed a debtor for purposes of the right to require a commercially reasonable disposition of collateral under the Illinois commercial code.

*Commercial Code* § 4.03(3)(b) at 4–43 (2d ed. 1988).

### C

Emphasizing the fact that the guaranty executed by May authorizes the Bank to seek satisfaction of LaBoca's debts from May prior to any disposition of the collateral, the Bank argues that the document must be construed to relieve it of any obligation to dispose of the collateral in a commercially reasonable manner. The Bank finds support for this argument in *First Commercial Corp. v. Geter*, 37 Colo. App. 391, 547 P.2d 1291 (1976), wherein a panel of our Court of Appeals concluded that because an absolute guaranty may be immediately enforced without first seeking satisfaction of the debt from the principal obligor or from disposition of any collateral, the defense of commercially unreasonable disposition of collateral is not available to a guarantor defending a suit by a creditor seeking recovery of a deficiency remaining on the debt.

We have concluded that a guarantor is to be deemed a debtor for purposes of the protections afforded by section 4–9–504(3) of the Code. In addition, in *Cooper Investments v. Conger*, 775 P.2d 76 (Colo.App. 1989), another panel of the Court of Appeals, relying on *First National Bank v. Cillessen*, 622 P.2d 598 (Colo.App.1980), concluded that section 4–9–501(3) of the Code prohibits a guarantor from waiving the commercial reasonableness requirement of section 4–9–504(3) of the Code. *Conger* at 80. The reasoning and results of *Conger* and *Cillessen* are consistent with our decision today. To the extent *Geter* expresses a contrary view, we disapprove of that decision.

### D

█ In view of our conclusion that May was prohibited by the Code from waiving her right to require commercially reasonable disposition of the collateral, we need not address the Bank's argument that by executing the guaranty May waived any right she might have had to require disposition of the property in a commercially reasonable manner.[5] May has asserted that the deficiency claimed by the Bank exceeds any amount she might actually owe because the Bank disposed of the collateral in a commercially unreasonable manner. It is undisputed that the amount of May's liability is based primarily, if not completely, upon the amount the Bank received from the sale of the collateral. The language, structure and underlying policies of the Code would be substantially undermined if May were prohibited from challenging the claimed deficiency on the ground that the sale of the collateral was not conducted in a commercially reasonable manner. We conclude that May is entitled to rely upon that right as a defense to the Bank's action, and that section 4–9–501(3) of the Code prohibits any waiver of that right. The trial court and the Court of Appeals erred in adopting a contrary view.

### III

For the above-stated reasons, the decision of the Court of Appeals is reversed

---

**5.** Even were we to adopt the minority rule that a guarantor may waive the right to demand a commercially reasonable disposition of collateral, it is far from certain that the continuing guaranty in this case establishes such a waiver. An unconditional guaranty is a contract permitting a creditor to require payment from the guarantor upon the default of the principal obligor prior to the fulfillment of any supplemental condition by any party to the transaction. *Yama v. Sigman*, 114 Colo. 323, 165 P.2d 191 (1945). Such a contract simply authorizes the secured party to proceed directly against the guarantor; it customarily does not purport to regulate the secured party's conduct in the event it elects to dispose of the collateral. *See United* *States v. Willis*, 593 F.2d 247 (6th Cir.1979); *Pavlantos v. Garoufalis*, 89 F.2d 203 (10th Cir. 1937); *Ford Motor Credit v. Lototsky*, 549 F.Supp. 996 (E.D.Penn.1982); *McEntire v. Indiana Nat'l Bank*, 471 N.E.2d 1216 (Ind.App. Dist. 4 1984). *See also* Jennings, *Guarantors and the UCC: The Need for Clarification*, 19 U.C.C.L.J. 127 (1986). The guaranty executed by May does not address the responsibilities of the Bank in the event it elects to dispose of the collateral prior to seeking satisfaction from May for LaBoca's indebtedness. Such silence need not be construed as signifying acquiescence by May in a negligent or possibly collusive disposition of the collateral.

and the case is remanded to that court with instructions to vacate the judgment of the trial court and remand the case to the trial court for further proceedings.