PENNSYLVANIA HOUSE, INC.

v.

JUNEAU'S PENNSYLVANIA HOUSE.

Civ. A. No. 1:90–CV–0620.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 19, 1991.

Michael W. Schultz, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for plaintiff.

Carl A. Parker, Rife Scott Kimler, Port Arthur, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

The primary dispute in this case involves the commercial reasonableness of a disposition of collateral under a security agreement. The secured party moves for summary judgment based on a purported waiver of the defense of commercial unreasonableness by the debtor. Because the right to a commercially reasonable disposition of collateral is not waivable under the relevant law, summary judgment is denied.

Juneau's Pennsylvania House, Inc. ("the dealership") became a furniture dealer for Pennsylvania House furniture in March, 1989. At the time the dealership was established, Riley, Creola, and Robert Juneau ("the Juneaus") executed indemnity agree-

ments personally guaranteeing all debts of the dealership to Pennsylvania House, Inc. ("Pennsylvania House"). Later, in October, the dealership executed two installment notes which created a security interest in favor of Pennsylvania House in inventory and display merchandise. The dealership incurred further debt to Pennsylvania House on its revolving account for merchandise. The dealership closed its doors in April, 1990, and allegedly defaulted on its debts to Pennsylvania House. Pursuant to a consent to private sale entered by the parties after default, Pennsylvania House held a private sale of collateral pledged by the dealership. Robert Heinzmann, a Pennsylvania House dealer from Houston purchased the merchandise at the private sale. The proceeds from the sale were insufficient to· satisfy the debts, and Pennsylvania House now sues the dealership and the Juneaus [1] for the deficiency amount.

In defense, the Juneaus assert that the disposition of collateral was commercially unreasonable under § 9–504(1)(c) of the Uniform Commercial Code and that the value of the collateral should be presumed to extinguish the debt. Pennsylvania House moves for summary judgment on the basis that the Juneaus waived the commercial unreasonableness defense in the Consent to Private Sale. The Consent recited, in part:

Riley B. Juneau, Creola W. Juneau and Robert J. Juneau in their individual and corporate capacities acknowledge that the private sale of the Inventory provided for in this Agreement is a "commercially reasonable" disposition of the Inventory as such term is defined in the Texas Uniform Commercial Code and each of them waives any and all rights to challenge such. sale and waives their right to assert that the private sale of the Inventory by Pennsylvania House, Inc. to Robert Heinzmann was not in every aspect, including method, manner, time, place and terms, commercially reasonable.

Consent to Private Sale, Plaintiff's Exhibit 1, at 4.

As a threshold matter, the court notes that Pennsylvania law governs this dispute. The agreements from which this case arises provide for construction "under and in accordance with" Pennsylvania law. *See* Security Agreement § 11, Accessory Security Agreement § 11, Indemnity Agreement. Under the *Erie* doctrine, this court applies the Texas choice of law principle that enforces the manifest intent of the parties to be bound by the law of another state. *See Austin Bldg. Co. v. Nat'l Union Fire Ins. Co.*, 432 S.W.2d 697, 701 (Tex.1968).

■ The issue, then, is whether after default a debtor may waive its right to a commercially reasonable disposition of collateral under Pennsylvania's Uniform Commercial Code. Pennsylvania law on this precise point is unclear. Therefore, this court must predict how a Pennsylvania court would rule if presented with the issue.

Section 9501(c) of the Pennsylvania Uniform Commercial Code provides:

To the extent that they give rights to the debtor and impose duties on the secured party, the rules stated in the following provisions of this title may not be waived or varied ... but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.

13 Pa.Cons.Stat. § 9501(c). One of the referenced sections, § 9504(c), states that every aspect of a disposition of collateral must be commercially reasonable. The official comments illuminate the Code's broad, pro-debtor policy:

In the area of rights after default our legal system has traditionally looked with suspicion on agreements designed to cut down the debtors rights and free the secured party of his duties.... The default situation offers great scope for overreaching; the suspicious attitude of the courts has been grounded in common sense.

13 Pa.Cons.Stat. § 9504 comment 4. The plain language of the statute seems to dic-

---

**1.** Hereinafter, the Juneaus and the dealership shall be referred to together as the Juneaus.

tate the construction that a debtor cannot waive the requirement that a disposition of collateral be in all respects commercially reasonable.[2] The only state or federal case addressing waiver of the right to a commercially reasonable sale of collateral stated, "A creditor's duty ... upon default to dispose of the collateral in a commercially reasonable manner is not subject to waiver or modification by agreement." *Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 1001–02 (E.D.Pa.1982) (holding that a guarantor is unable to make a pre-default waiver of the right to a commercially reasonable disposition of collateral).

■ Despite the apparently clear language of the Code, Pennsylvania House urges a construction of the code which would forbid waiver of commercial reasonableness by the debtor before default while allowing waiver once the debtor had gone into default.[3] Differing rules for pre- and post-default waivers are in place for the

right to notice. The rule is well established that notice of intended disposition of collateral is non-waivable before default but is waivable after default.[4] The notice cases, however, do not advance the case for a bifurcated waiver rule for commercial reasonableness. In fact, comparison of the notice and commercial reasonableness provisions leads to the conclusion that the code forbids both pre- and post-default waiver of commercial reasonableness. Unlike commercial reasonableness, waiver of notice is explicitly allowed in § 9–504(1)(c). Section 9–504(1)(c) requires reasonable notice of intended disposition of collateral by the creditor unless the debtor has "signed after default a statement renouncing or modifying his right to notification of sale." At least one jurisdiction has explicitly acknowledged the difference:

> While the Code authorizes waiver of the right to receive reasonable notice of the disposition of collateral after default, it

**2.** Some courts have allowed a guarantor (as opposed to a primary debtor) to waive the defense, especially when the Small Business Administration was the secured party. *See, e.g., United States v. Lattauzio,* 748 F.2d 559, 562 (10th Cir.1984) (SBA guaranty agreement effectively waived defense under New Mexico law); *First National Park Bank v. Johnson,* 553 F.2d 599, 602 (9th Cir.1977) ("absent willful or grossly negligent waste or misconduct, [creditor] may recover from unconditional guarantor without regard to the creditor's treatment of the collateral;" Montana law; SBA case); *Chrysler Credit Corp. v. Curley,* 753 F.Supp. 611, 614 (E.D.Va.1990) (Virginia law; SBA not a party); *United States v. H & S Realty Co.,* 647 F.Supp. 1415, 1420 (D.Me.1986), *aff'd* 837 F.2d 1 (1st Cir.1987) (Maine law; SBA case); *United States v. Kurtz,* 525 F.Supp. 734, 745–46 (E.D.Pa.1981), *aff'd mem.,* 688 F.2d 827 (3d Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982) (California law; SBA case). *See generally United States v. Kelley,* 890 F.2d 220, 222–24 (10th Cir.1989) (suggesting that these federal courts are applying a uniform federal interpretation of the Uniform Commercial Code in SBA cases, instead of truly forecasting state law).

However, a significant number of federal courts draw no distinction between guarantors and primary debtors, holding that neither is able to waive the right to commercially reasonableness. *See, e.g., United States v. Kelley,* 890 F.2d 220, 224 (10th Cir.1989); *National Bank of Washington v. Pearson,* 863 F.2d 322, 326–27 (4th Cir.1988); *United States v. Willis,* 593 F.2d 247, 255 (6th Cir.1979); (*United States v. Conrad Publishing Co.,* 589 F.2d 949, 952–53 (8th Cir.

1978); *United States v. Terrey,* 554 F.2d 685, 693 (5th Cir.1977); *United States v. Hunter,* 652 F.Supp. 774, 779 (D.Kan.1986); *Federal Deposit Insurance Corp. v. Rodenburg,* 571 F.Supp. 455, 459 (D.Md.1983).

Most state authorities which address the issue draw no distinction between guarantors and debtors with regard to waiver of commercial reasonableness. *See, e.g., May v. Women's Bank,* 807 P.2d 1145, 1147 (Colo.1991); *Branan v. Equico Lessors, Inc.,* 255 Ga. 718, 342 S.E.2d 671, 674 (1986); *Bank of Hawaii v. Davis Radio Sales & Service, Inc.,* 6 Haw.App. 469, 727 P.2d 419, 429 (1986); *McEntire v. Indiana Nat'l Bank,* 471 N.E.2d 1216, 1224–25 (Ind.Ct.App.1984); *Dakota Bank & Trust Co. v. Grinde,* 422 N.W.2d 813, 816–18 (N.D.1988); *Marine Midland Bank v. CMR Industries, Inc.,* 159 A.D.2d 94, 559 N.Y.S.2d 892, 900 (2d Dept.1990); *Marine Midland Bank v. Kristin Int'l Ltd.,* 141 A.D.2d 259, 534 N.Y.S.2d 612, 613 (4th Dept.1988); *contra First City v. Vitale,* 123 A.D.2d 207, 510 N.Y.S.2d 766, 767 (1987) (holding that guarantors can waive the defense before default).

**3.** *See Mercantile Bank & Trust v. Cunov,* 749 S.W.2d 545, 548 (Tex.App.—San Antonio 1988, writ denied) (U.C.C. § 9–501 "prevents pre-default waiver of secured parties rights conferred by" § 9–504(1)(c)). Pennsylvania House infers from this language that any post-default waiver would be valid.

**4.** See 9 Anderson, Uniform Commercial Code § 9–504:64 (3d ed. 1985 & Supp.1990); 69 Am. Jur.2d; Secured Transactions §§ 617, 624 (citing cases).

**1198**

prohibits waiver of the right to demand a commercially reasonable disposition of the collateral.

*May v. Women's Bank,* 807 P.2d 1145, 1147 (Colo.1991).

Because a Pennsylvania court would likely rule that commercial reasonableness may not be waived either before or after default, summary judgment on the waiver issue is denied.

■ Pennsylvania House also moves for dismissal of the Juneaus' counterclaim in anti-trust on the grounds that it fails to assert a claim for which relief may be granted. Fed.R.Civ.Proc. 12(b)(6). The defendants assert claims under section 1 of the Sherman Act and section 2(a) of the Clayton Act. Both claims fail to make out a prima facie case and are dismissed.

■ The elements of a violation of § 1 of the Sherman Act are (1) combination or conspiracy between two or more entities (2) to achieve a monopoly and effectuate an unreasonable restraint on trade (3) which causes damages to the party asserting the claim. *Knutson v. Daily Review, Inc.,* 548 F.2d 795, 801–01 (9th Cir.1976). Section 1 of the Sherman Act cannot be violated by an entity acting alone. *Fisher v. City of Berkeley,* 475 U.S. 260, 266, 106 S.Ct. 1045, 1049, 89 L.Ed.2d 206 (1986). A parent and subsidiary corporation cannot constitute a conspiracy to support a violation of § 1. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 771, 104 S.Ct. 2731, 2741, 81 L.Ed.2d 628 (1984). Furthermore, officers, directors, or employees of the same corporation cannot, merely by acting together, constitute such a conspiracy. *Id.* at 769, 104 S.Ct. at 2740. Because the Juneaus allege that Pennsylvania House violated the Sherman Act but fail to indicate the existence of other co-conspirators, the claim fails. A claim under section 2(a) of the Clayton Act requires that the claimant allege price discrimination and a tendency to create a monopoly or substantially lessen competition. *Dean Milk Co. v. Federal Trade Commission,* 395 F.2d 696, 700–01 (7th Cir.1968). The defendants make neither of these allegations and their claim fails.

For the above stated reasons, the Juneaus' antitrust counterclaims are dismissed, and Pennsylvania House's motion for summary judgment is denied.