No. 12,729.

TAYLOR ET AL. *v.* HAKE ET AL.
(20 P. [2d] 546)

Decided March 6, 1933.   Rehearing denied April 4, 1933.

Mr. JOHN H. SCHULTZ, Mr. CHARLES R. SKINKER, for plaintiffs in error.

Mr. O. A. JOHNSON, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

LEONARD Taylor, Edward Pierson, S. Sugitani and G. Hongo, called herein the defendants, seek the reversal of a judgment against them and in favor of C. W. Hake, T. N. Willis, Alfred Peterson and W. M. Harmon, called herein the plaintiffs.

The plaintiffs and the defendants were stockholders of the Lafayette Farmers Union Elevator Company, a corporation, called herein the Union Company. That company became indebted to the Mercantile Bank and Trust Company, called herein the bank, upon promissory notes given for money borrowed from the bank to carry on the business of the Union Company. The bank refused to extend the notes or make any further loans unless some of the stockholders guaranteed the payment of all money due and to become due from the Union Company to the bank up to the amount of $35,000. Thereupon a contract of guaranty was signed by the plaintiffs, the defendants and nine other stockholders, binding themselves jointly and severally. On January 24, 1923, the indebtedness of the Union Company to the bank amounted to $18,500. As additional security, the Union Company gave its note for that amount, secured by deed of trust of all its property. For convenience, the note was made payable to one W. L. Smith, who, pursuant to the understanding of the parties, immediately endorsed the note without recourse and delivered it to the bank. The note matured on January 24, 1924, and was not paid, the Union Company then being insolvent. Some of the stockholders organized a new corporation, the Lafayette Farmers Milling and Elevator Company, called herein the Milling Company, and that company took over the property and business of the Union Company, and assumed its debts. Being unable to make the business pay, and having become insolvent, it

traded the property for land in Weld county, which was encumbered for $9,000. In order to make the trade, it was necessary to reduce to $9,000 the indebtedness on the Union Company's note, and that was done by the plaintiffs with their own money. The Weld county land was deeded to the plaintiffs, who thereupon held title as trustees for those interested, including all who had signed the guaranty contracts referred to above. During this time the plaintiffs, as required by the guaranty contracts, and in response to the bank's demand, made payments upon the Union Company's indebtedness to the bank. In an effort to save something from the wreck, the plaintiffs, as trustees, traded the Weld county land for some Denver property, which was encumbered for $7,000, and received a note for $3,500, secured by trust deed of the Weld county land. The Denver property is referred to as the Dahlia street property. Being unable to pay the encumbrance and the taxes on the Weld county land, and being insolvent, the grantee in the plaintiffs' deed reconveyed the land to the plaintiffs in consideration of the cancellation and surrender of the note for $3,500. Thereafter the Dahlia street property was traded for other property in Denver and property in Jefferson county. As part consideration, the plaintiffs received $1,000, which was used for paying taxes, commission and expenses on the Dahlia street property.

In their complaint the plaintiffs ask for judgment against the defendants for their proportionate share of the money paid by the plaintiffs under the guaranty contracts. They also ask for a receiver of all the property held by them in trust; that that property be sold; that out of the proceeds they be reimbursed for all money advanced by them for taxes, interest and expenses; and that the balance be distributed by order of court among the guarantors, creditors and stockholders, according to their interests. Nothing seems to have been done about the appointment of a receiver or the sale of the trust property. The defendants, claiming that they were released entirely from obligation, evidently were not inter-

ested in this feature of the case. Such matters are not discussed in the briefs. The court made a general finding for the plaintiffs, and rendered a judgment against each defendant separately for $883.47.

There are 38 assignments of error. We shall not attempt to discuss all of them, but will address ourselves to those only that we consider of sufficient importance to merit consideration.

1. It is said that the court erred in denying defendants' motion to quash the summons on the ground that it does not state the amount of money demanded, and that this ruling denied to defendants the due process of law guaranteed by the federal and state Constitutions. The summons states: ''The said action is brought to recover judgment against said defendants, and each of them, for a contribution for such an amount as it shall be found that there is due from each of the defendants herein, and for such other and further relief as to the court may seem meet and proper, as will more fully appear from the complaint in said action, to which reference is here made, a copy of which is hereto attached.'' A copy of the complaint was attached.

The complaint fully advised the defendants of the nature of the demand, and prayed judgment for ''such amount as it shall be found that there is due from the defendants herein to the plaintiffs.'' It was impracticable to state at that time a definite amount. The force of this statement will be apparent when we consider that in their answer, thereafter filed, the defendants claimed fraud in procuring their signatures to the guaranty contract. The defense seems to have been abandoned, but if one or more, but less than all, of the defendants had sustained the defense, it might have caused an increase in the proportion to be contributed by the others. Section 36 of the Code of Civil Procedure provides that the summons shall briefly state ''the sum of money or other relief demanded in the action; but the summons shall not be considered void or erroneous on account of an insuffi-

cient statement of the relief demanded unless the same is manifestly misleading.'' The statement in the summons is not manifestly misleading in respect to the relief demanded; and, therefore, the court's refusal to quash the summons was not erroneous. *Burkhardt v. Haycox,* 19 Colo. 339, 35 Pac. 730. The ruling did not deny to defendants due process of law.

2. Complaint is made of the court's denial of the motion to strike the second amended complaint, and it is said that the court's action was in violation of the due process clause of the federal and state Constitutions. It is contended that that complaint stated a cause of action different from that stated in the original complaint. The cause of action was the same in both. In each, the plaintiffs alleged the making of the guaranty contract, their payment of money under that contract, and the refusal by defendants to contribute their proportion. The complaint went beyond the strict requirements of the occasion by making a full statement, in the nature of an accounting, concerning the property acquired by the plaintiffs as trustees. It is said that the averments with reference to such matters are not harmonious in all respects. But however that may be, the cause of action, as we have said, remained the same. The ruling of the trial court was not erroneous, and did not result in depriving the defendants of their property without due process of law.

3. It is said that the second amended complaint fails to state a cause of action, in that it does not allege that any plaintiff paid more than his proportionate part of the debt. The complaint alleges that the plaintiffs paid to the bank, on the $18,500 indebtedness, $16,734.45, and obtained from the bank a release of all obligors, including of course the plaintiffs and the defendants, from liability to the bank under the guaranty contract. Seventeen persons signed that contract. The payment is alleged to have been made jointly by the four plaintiffs. That is sufficient to meet the objection.

4. Another contention is that the second amended

complaint does not allege that the bank notified the defendants of its acceptance of the guaranty. Where there is a mere offer to guarantee, it requires a notice of acceptance. But it is held that where notice is required, knowledge or information coming to the guarantor, through any source, that the guarantee is acting under the guaranty and extending credit on the strength thereof, is tantamount to direct notice. See *Asmussen v. Post Printing & Publishing Co.*, 26 Colo. App. 416, 143 Pac. 396; 12 R. C. L. p. 1071. In the present case the defendants were stockholders of the Union Company, and, in reliance upon the guaranty, the bank, instead of suing the company on the notes, extended the time of payment, and also made further loans of money to enable the company to continue in business, and the money so loaned was used for that purpose. Knowledge or notice of acceptance, if any notice were necessary, may well be inferred from all the circumstances. The transaction, however, was not a mere offer to guarantee, but an actual guaranty, and in such a case no notice is necessary. See Asmussen case, supra.

5. It is said that the second amended complaint fails to show that the bank demanded of the defendants the payment of the Union Company debt, and that, as the guaranty contract with the bank was to pay the debt on demand, the defendants are not shown to be liable. The guaranty in this case being absolute, the guarantors were bound to pay the indebtedness at its maturity, if not paid by the principal. The plaintiffs met their obligation by paying far more than their proportion, and they thereupon became entitled to contribution from all the other guarantors, including the defendants. This is not a suit by the bank against the defendants on the guaranty contract. It is a suit brought by guarantors against co-guarantors for contribution, and it was not necessary to prove demand by the bank upon such co-guarantors in order to warrant a recovery by the plaintiffs.

6. Many pages of defendants' brief are devoted to the objection that, as the guaranty was confined to

debts due to the bank, it did not cover the note for $18,500, because the note was made payable, not to the bank, but to W. L. Smith. The objection is without merit. The note was given to evidence an indebtedness to the bank, not to Smith. The Union Company owed Smith nothing. His name was used merely for convenience, and immediately upon the execution of the note, Smith endorsed it without recourse, and the note was delivered at once to the bank.

■ 7. Another contention is that the guaranty contract was altered after Sugitani and Hongo signed it, and that this released them from liability. The facts disclosed by the record are these: The bank held a guaranty contract signed by 14 guarantors. The signers asked to withdraw the contract for the purpose of getting additional signatures. The bank refused to part with the possession of the instrument held by it, but furnished an exact copy thereof for the additional signatures and that this is the instrument signed by Sugitani and Hongo, and also by Harmon. Harmon paid his proportion of the debt and joined the other plaintiffs in the suit. In order to advise the new guarantors of the names of those who had signed the first instrument, those names were written with a pencil on the left margin of the paper. Thereafter pencil lines were drawn through those names. The matter was fully explained to Sugitani and Hongo when the instrument was presented to them for their signatures. The guaranty contract was not altered within the meaning of the rule invoked by the defendants.

■ 8. It is said that the court erred in holding that there was not a nonjoinder of parties defendant, and that by that ruling the defendants were denied the due process guaranteed by the federal and state Constitutions. It is contended that all of the guarantors, other than the plaintiffs, should have been made defendants. There were 17 guarantors. All of the plaintiffs' co-guarantors, except 5, had contributed their proportionate share, or had died, or had moved away. The guar-

anty was joint and several. The plaintiffs did not attempt to increase the defendants' proportion of the contribution by reason of the omission of some of the co-guarantors, but sought to hold each of the defendants for only a one-seventeenth part of the amount paid by the plaintiffs, and the judgment was for that amount, the court having first disallowed a part of the amount claimed by the plaintiffs. The plaintiffs could lawfully have released any of their co-guarantors from liability to them without thereby releasing the defendants from their obligation to contribute their several proportions. C. L. §§5124, 5125, 5126. The omission of several guarantors did not add to the burden of the defendants; they, therefore, have no just cause for complaint. The trial court's ruling was right, and did not deny to the defendants due process of law.

9. Another point made by the defendants is that the plaintiffs converted to their own use the property of the Union Company, which, it is said, was sufficient to pay, and should have been applied to the payment of, the company's indebtedness, and that this released defendants from liability to plaintiffs. Closely connected with this is the contention that the property of the Union Company was sufficient to pay its indebtedness, and that it was the duty of the plaintiffs to exhaust that property before suing defendants for contribution. The situation with reference to the transfer of the Union Company's property was explained in our statement of facts. The record shows the insolvency of the Union Company and the hopeless condition of its business, and the plaintiffs' repeated efforts to save something for the benefit of all persons interested, including the defendants. There is nothing in the record to suggest that the plaintiffs acted otherwise than in good faith. They seem to have acted not only bona fide, but, so far as the record shows, with good judgment. The points suggested above were decided by the trial court adversely to the defendants' contention, and, in so deciding, the court did not err.

10. Equally lacking in merit are the contentions that the amount paid by plaintiffs was pursuant to an independent agreement for plaintiffs' own benefit; that it does not appear that loans were made to the Union Company after the execution of the guaranty contract; that it was error to admit evidence of the filing of a notice of lis pendens; that defendants had a right to exoneration from the Union Company's property and the plaintiffs personally; that the evidence does not support the decree; and other contentions that need not be stated. It would extend this opinion to unnecessary length to discuss all of those contentions. We have given them due consideration, and have concluded that they are unsound.

We discover no reversible error in the record. The judgment, therefore, is affirmed.

MR. JUSTICE BOUCK did not participate.