No. 15,402.

YAMA, individually and doing business as YAMA MERCANTILE COMPANY *v.* SIGMAN' ET AL., doing business as K. & B. PACKING AND PROVISION COMPANY.

(165 P. [2d] 191)

Decided December 3, 1945. Rehearing denied January 7, 1946.

Mr. CHARLES A. HASKELL, Mr. HENRY E. ZARLENGO, for plaintiff in error.

Mr. CHARLES ROSENBAUM, Mr. GRAHAM SUSMAN, Mr. HYMAN D. LANDY, for defendants in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

LOUIS K. SIGMAN, Sam S. Sigman and Morris Sigman, copartners doing business under the firm name and style of K. & B. Packing & Provision Company, instituted an action in the county court against Frank DeBus and K. G. Yama, individually and doing business under the firm name and style of the Yama Mer-

cantile Company, to recover on an account, and secured a judgment against Yama, who has sued out a writ of error seeking a reversal. Reference will be made to the parties as they appeared in the county court.

Plaintiffs allege that Frank DeBus was indebted to them in the sum of $1,184.16 for and on account of goods sold and delivered, the payment of which account was demanded but not made. They further allege that the payment of the DeBus account was guaranteed in writing by defendant, who, upon demand, refused to pay the indebtedness. Defendant Yama in his answer and numerous defenses admitted the execution of the guaranty but denied liability thereunder.

No service of process was had on DeBus; no appearance was entered for him, and, consequently, no judgment was entered against him.

The case was tried to the court without the intervention of a jury, and at the conclusion of plaintiffs' evidence, defendant interposed his motion to dismiss, which was denied, whereupon defendant elected to stand on his motion, and judgment was entered in favor of the plaintiffs and against the defendant.

The evidence discloses that defendant, doing business as the Yama Mercantile Company, was engaged in the general mercantile business at Oak Creek, Colorado, and prior to 1939 had purchased goods and merchandise from plaintiffs. In the early part of 1939, defendant rented a portion of his establishment to DeBus in which to conduct a meat market. Defendant, while in Denver in January, 1939, called upon plaintiffs and orally agreed to guarantee the payment of the DeBus account provided plaintiffs would furnish him with such merchandise as was necessary. Plaintiffs were not satisfied with defendant's oral guaranty and insisted that the guaranty be put in writing, and this defendant promised to do. The written guaranty upon which plaintiffs rely is as follows:

"The Yama Mercantile Company
Oak Creek, Colorado

February 23, 1939.

"K & B Packing & Provision Co.
1525 Blake Street
Denver, Colorado

"Dear Sirs:

"We received your letter of Feb. 20, 1939, in which you inquired about the DeBus Meat Market account.

"At the present time we will take the full responsibility of paying his account if he should fail to do so.

"*It is our understanding that he is, to pay his account every two weeks, and if he is unable to, your representative is to notify us immediately.*

"If this arrangement is not satisfactory in any way with your factory, please let us know at once, but if this is satisfactory, we wish that you would continue to supply the market with provisions until further notification.

> "Yours very truly,
> "K. G. Yama
> "The Yama Merc. Co." (Italics ours)

On the date of the written guaranty the account of plaintiffs with DeBus was $335.98. Plaintiffs continued sending DeBus goods and merchandise until April, 1942, at which time the balance due on the account was $1,184.16, the amount for which judgment was entered as above stated.

It further appears from the evidence that from its inception until the conclusion of the DeBus account it was never paid in full, and no witness testified that defendant was notified of DeBus' default in the payment of his account *every two weeks* or *at any stated time throughout the entire period of the account*. Defendant was called as an adverse party and repeatedly stated, in words which indicated an unfamiliarity with

the English language, that he received no notice of the DeBus account from plaintiffs in accordance with the guaranty although their representative ordinarily waited on DeBus weekly for the purpose of procuring orders. When Yama was asked if he checked up every two weeks to see if the DeBus account was settled, he answered, "No; the company notified me every two weeks, or three weeks, and I thought the man was all settled."

Defendant takes the position that the guaranty was conditional, and therefore, before liability for the payment of the DeBus account could attach to him, plaintiffs must establish that they notified him every two weeks of the condition of their account with DeBus. If we determine that the letter of February 23, 1939, is a conditional guaranty, the motion to dismiss, interposed by defendant, was good and should have been granted because there is no competent evidence in the record showing that the notification mentioned in the guaranty was given.

It seems to be well established law that a guaranty must be strictly construed and cannot be extended. *Sutton Co. v. McCullough,* 64 Colo. 415, 174 Pac. 302, *Wilcoxson v. McMullin,* 99 Colo. 432, 63 P. [2d] 880. Generally speaking, contracts of guaranty are classified as absolute or conditional.

"An absolute guaranty is an unconditional undertaking on the part of the guarantor that the debtor will pay the debt or perform the obligation. The conditional guaranty contemplates, as a condition to liability on the part of the guarantor, the happening of some contingent event other than the default of the principal debtor or the performance of some act on the part of the obligee. Where the guaranty is conditional, the obligation of the guarantor may not be enforced unless the event has occurred or the act has been performed. * * *" 24 Am. Jur., p. 885, §16.

"An absolute guaranty is one by which the guarantor

unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor. * * *

"On the other hand, a conditional guaranty is one which is not enforceable immediately on the default of the principal debtor, but some contingency other than such default must happen, or the guarantee must take some steps, to fix the liability under the guaranty. * * *" 38 C.J.S., p. 1139, et seq., §7.

As we construe the guaranty in the instant case, it was incumbent upon plaintiffs, through their representative, to notify defendant every two weeks of the status of their account with DeBus, and this they failed to do. There may have been many reasons why defendant should insist upon this two weeks' notice of the status of the DeBus account. Those reasons are unimportant here because the matter was one of which defendant had complete control.

■■■ When defendant entered into a contract of guaranty, it was to pay the debt of another, and he had the right to make the terms and to set forth the conditions upon which he would assume the burden of guaranteeing DeBus' account, and if these conditions were not acceptable to plaintiffs, it was incumbent upon them to so notify defendant and relieve him of any responsibility in connection therewith. Under the plain terms of the guaranty of February 23, 1939, defendant was entitled to notice each two weeks, and it became incumbent upon plaintiffs to give this notice if they sought to enforce payment of the DeBus account from defendant. "Where, either by the express terms of the guaranty or by necessary implication, the guarantor's liability depends on the performance of certain conditions or stipulations other than the principal's default, mere default on the part of the principal is not sufficient to fix liability on the guarantor; it is also necessary that there be a proper performance on the part of the guarantee of

such conditions or stipulations; otherwise the guarantor will not be liable, * * *" 38 C.J.S., p. 1215, §60.

The guaranty involved in the present action was conditional. Under it plaintiffs were obligated to notify defendant every two weeks if DeBus was unable to, or did not, pay his account for that period. The evidence wholly fails to establish the performance of this condition by plaintiffs, and their failure in this respect relieves the defendant of all liability under his guaranty.

Defendant's motion at the conclusion of plaintiff's case in chief to dismiss should have been granted, and the trial court erred in failing so to order.

The judgment is reversed and the cause remanded with instructions to enter judgment in favor of defendant.

MR. CHIEF JUSTICE BAKKE dissents.

MR. CHIEF JUSTICE BAKKE, dissenting.

It is well to remember that in this case the question involved has to do with the ruling of the trial court on defendant's motion to dismiss, upon which he elected to stand after the motion was denied. Under such circumstances the plaintiff's evidence must be taken as true. *Arps v. City and County of Denver,* 82 Colo. 189, 257 Pac. 1094; *Robinson v. Belmont-Buckingham Holding Co.,* 94 Colo. 534, 31 P. (2d) 918. In *Ford v. Town of Meeker,* 64 Colo. 201, 170 Pac. 955, we said: "A motion for nonsuit admits the truth of plaintiff's evidence and every inference of fact that can legitimately be drawn, and on such motion the evidence will be interpreted most strongly against defendant. 38 Cyc. 1515. The plaintiff's evidence made out a prima facie case. The defendant offered no testimony. Under these circumstances we deem it was error to sustain the motion." See, also, *Beatty v. Stir,* 108 Colo. 253, 115 P. (2d) 644; *Parrish v. Smith,* 108 Colo. 256, 115 P. (2d) 647.

It is stated in the court's opinion that there was no compliance with the guarantee in that the notification mentioned was not given. Assuming, as the author of the opinion does, that the condition means that Yama should be notified every two weeks, we have his statement, as noted in the opinion, that "the company notified me every two or three weeks." (What he thought was immaterial.)

It appears from the record that Morris, the company's agent, who called at Yama's store *every week,* stated that he had weekly statements of the account with him, that these statements were regularly delivered to DeBus, and that Yama was present in the store ninety-nine percent of the time; that he, Morris, exhibited these weekly statements to Yama personally on numerous occasions, and that Yama "just threw up his hands."

The only purpose of the so-called condition was to keep Yama advised of the status of the account. To reach the conclusion that he was not so advised, we would not only have to disregard the inferences that the trial court (not us) was entitled to draw, but also to ignore the plain meaning of Yama's own words, and Morris's undisputed testimony.

Not in my memory, have we gone to such length in reversing a judgment where motion of dismissal was denied. I respectfully dissent.