Mr. Justice Lee
delivered the opinion of the Court.
The American National Bank of Denver, defendant in error, obtained a judgment in the Denver District Court for $20,475 and costs, against Stewart A. Gates and D. A. Stone, plaintiffs in error. The bank’s claim was founded upon a written guaranty admittedly signed by Gates and Stone, which document was designated as a “Continuing General Guaranty” and guaranteed the credit of the Rasmussen Construction Company (Rasmussen).
The pertinent portions of the guaranty, which was dated April 30, 1962, are as follows:
“In consideration of The American National Bank of Denver (hereinafter called the Bank), extending credit or procuring credit to be extended to RASMUSSEN CONSTRUCTION COMPANY, (hereinafter called the Debtor), I or we, the undersigned, do hereby jointly and severally unconditionally guarantee unto the bank, its successors and assigns, the prompt payment at maturity or at the time to which said maturity may be extended, of any and all indebtedness, and any extensions or renewals thereof, evidenced by notes, bills of exchange, checks or other instruments executed, accepted, drawn or endorsed by the Debtor, which the Bank now owns and holds, or which the Bank may here *374 after own, hold, purchase or discount for or on account of the Debtor.
“This guaranty shall continue in full force and effect until written notice of its discontinuance shall have been served upon the Bank, and after such notice it shall continue in full force and effect as to any and all such indebtednesses as may then be owned by the Bank, its successors and assigns. * * *”
Gates and Stone disputed liability. They contend that they signed the guaranty forms' in blank and that these forms were intended to secure the credit of a different corporation, the Western States Building, Inc.; moreover, they contend that the bank wrongfully inserted the name of Rasmussen in the guaranty forms.
The evidence showed that Rasmussen was engaged in the construction business in the Grand Canyon area of Arizona, doing work for the National Forest Service. The principal owners of this business were a Dr. Wheel-right and Mrs. Leah Wheelright, uncle and aunt of D. A. Stone, and Dean Rasmussen and his wife, Joan Rasmussen, Stone’s cousin. Because of the remote field location of the construction work, it was arranged that the Rasmussen office be located in the office of the defendants, who did business as Gates-Stone and Company in Denver, Colorado. Stone in fact supervised the financial operation for Rasmussen; and, among other services, he performed the analyses of bids, investigation and verification of subcontractors, maintenance of records and accounts, negotiation of loans for operating capital, payment of material accounts and payrolls, and general supervision of the details of the business.
In return for these services, Gates and Stone received fees based upon a percentage of the contract price of work awarded to the company. They received approximately $4,662 in fees for such services over a period of approximately sixteen months. Additionally, Gates and Stone earned over $20,000 in insurance and bond pre *375 miums arising out of the sale of personal life insurance to the Rasmussen owners, key-man life insurance for the company officers, and fidelity and performance bonds necessary in the operation of the business. Illustrative of the close business relationship between the defendants and Rasmussen was the signing by Stone in behalf of Rasmussen of the $15,000 note, the default in payment of which gave rise to the action on the guaranty.
The establishment of the Rasmussen line of credit at the bank was initiated through Stone’s efforts, and the first moneys were borrowed on April 30, 1962, the date of the guaranty contract. The bank records showed fifteen separate loans made to Rasmussen, ranging as high as $45,000. When the last renewal note of $15,000 became delinquent, demand was made upon Gates and Stone for payment under the guaranty. Payment was refused.
Defendants answered the bank’s complaint, denying liability and counterclaiming for fraud for the alleged unauthorized insertion in the guaranty of the name of Rasmussen in place of the intended principal, Western States Building, Inc. Trial was to the court, which made detailed findings in favor of the bank on its claim and against defendants on their counterclaims.
Our study of the record indicates that the findings of the trial court are sufficiently supported by ample competent evidence, both testimonial and documentary. The critical area of dispute involved defendants’ claim of wrongful insertion of the name of Rasmussen in the guaranty forms, which claim found its support in the testimony of Gates, Stone and one McVittie who was the loan officer of the bank when the initial line of credit was established for Rasmussen. At the time of the trial, McVittie was no longer employed by the bank and had become associated with Gates and Stone in two business ventures. The credibility of these witnesses was for the trial court to assess. We will not disturb the findings of the trial court.
*376 Our resolution of this case, however, does not -rest solely upon the foregoing principles, in view of the legal arguments raised by plaintiffs in error.
I.
It is first contended that the court erred in admitting the contracts of guaranty into evidence for want of a sufficient foundation. In support of this contention, it is argued that in addition to the genuineness of the signatures the bank should have been required to present evidence of the circumstances surrounding the negotiation of the guaranty and of its delivery to the bank. Admittedly, such evidence might have been helpful to the trial court in its determination of the question; however, we do not agree that under the circumstances such was requisite to the court’s ruling of admissibility.
First of all, the relevance of the contract of guaranty is obvious, it being the basis of the action. Its legal effect depended upon its authenticity. The signatures to it were judicially admitted.
“* * * (1) When a person is charged with executing a signed document, for the purposes of affecting him with certain legal consequences, the act which suffices to charge him is any act by which he adopts and makes his own the terms of the writing. It is therefore, in general, immaterial whether he has himself written the body of the document or not, if he has signed it. It is even immaterial whether he has signed it, if he has otherwise acknowledged or adopted it. Hence, proof of the signature of the document is sufficient to charge him; * * * precisely as proof of the oral acknowledgment would suffice * * 7 J. Wigmore, Evidence § 2134 (3d ed.) (Emphasis supplied at source.)
 The contract being regular on its face may be presumed to have been properly executed. 29 Am.Jur.2d Evidence § 247. It was in the possession of the bank as a part of the bank’s records and its delivery may also be presumed. 9 J. Wigmore, Evidence § 2520 (3d ed.) Additionally, the bank extended credit in reliance on it. *377 Under this state of the record, sufficient evidentiaryfoundation had been established for its admission into evidence.
II.
The second argument for reversal is based upon the proposition that liability under the contract must fail for the reason that the creditor (bank) gave no “notice of acceptance” to the guarantors (Gates and Stone). We do not agree. From its express language we construe the contract to be an unconditional absolute guaranty of existing and future credit, to continue until terminated by written notice from the guarantors. For a discussion of this problem, see Bank v. Foreign Car Rental, 157 Colo. 545, 404 P.2d 272; Yama v. Sigman, 114 Colo. 323, 165 P.2d 191; Taylor v. Hake, 92 Colo. 330, 20 P.2d 546; Asmussen v. Post Co., 26 Colo. App. 416, 143 P. 396.
An analysis of the guarantors’ undertaking here shows that they presently guaranteed the payment of the obligation to the bank in the following language:
“In consideration of The American National Bank of Denver * * * extending credit or procuring credit to be extended to RASMUSSEN CONSTRUCTION COMPANY, * * * I or we, the undersigned, do hereby jointly and severally unconditionally guarantee unto the bank, * * (Emphasis added.)
This is not an offer to guarantee in the future, which ordinarily requires a notice of acceptance before becoming binding (Taylor v. Hake, supra); rather, it is a promise made for an act to be performed, which when performed is the “operative acceptance” that completes the contract and binds the guarantors. 1 A. Corbin, Contracts § 68; Restatement of Contracts § 56.
Additionally, where as here the guarantors were for all practical purposes the business managers of Rasmussen, having negotiated the series of loans for operating capital with the bank, clearly, by reason of their close relationship with Rasmussen and the bank, *378 they had actual notice of the extensions of credit. Under these circumstances — absent an express contractual provision requiring the giving of notice of acceptance —.to require such notice now would constitute an unreasonable formality without purpose or substance. Restatement of Contracts § 56; 6 A.L.R.3d 358.
We have considered each of the other arguments for reversal advanced by plaintiffs in error and do not consider them to be meritorious.
The judgment is affirmed.
Mr. Chief Justice Pringle not participating.