**FBS AG CREDIT, INC., Plaintiff,**

v.

**ESTATE OF Howard WALKER, individually; R. Kent Kunz, individually; and Weldon Gainer, individually, Defendants.**

Civ. A. No. 94–B–2587.

United States District Court, D. Colorado.

Nov. 21, 1995.

1428

Nancy B. Smith, Michael D. Killin, Dorsey & Whitney, Denver, CO, Paul Scheerer, Dor-

sey & Whitney, Minneapolis, MN, for plaintiff.

Neil E. Ayervais, Stephen E. Kapnik, Gina B. Masterson, Lohf, Shaiman & Jacobs, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this diversity jurisdiction action, plaintiff, FBS AG Credit, Inc. (FBS), moves for summary judgment on its claim against defendants, Estate of Howard Walker (Walker), R. Kent Kunz (Kunz), and Weldon Gainer (Gainer). The motion is adequately briefed and oral argument will not materially aid its resolution. After consideration of the motion and briefs, I conclude that summary judgment should be granted in favor of FBS.

### I.

FBS seeks recovery under the terms of written guaranties executed by Walker, Kunz, and Gainer in connection with a financial transaction. In January, 1993, FBS made loans to a group of affiliated companies, Heartland, Inc. (Heartland), Western Valley Pallets, Inc., Heartland Industries, Inc., Heartland Distributors Group, Inc., Western Valley Processing, Inc., Sand Hills Beef Corporation, and The Sigman Meat Company (Sigman), Inc. (collectively "Borrower"). The loan and security agreement (Pltf.Exh. 1) provided for loans in principal sums from FBS up to $23,500,000.00. As contemplated by the loan and security agreement, Borrower executed and delivered to plaintiff a term note (Plt.Exh. 2) in the amount of $3,500,000.00. Walker, Kunz, and Gainer each executed a written guaranty (Appendix A) in which each unconditionally guaranteed full and prompt payment of the $3,500,000 term note. The $20,000,000 line of credit note was not guaranteed by defendants.

Borrowers defaulted on the term note and then filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Colorado. FBS then filed this action against the guarantors, Walker, Kunz, and Gainer. On September 11, 1995, Walker died. On September 22, 1995, I ordered that the Estate of Howard Walker be substituted for Howard Walker, individually.

### II.

*Choice of law*

 As an initial matter, I address the choice of law issue raised by defendants who assert that despite the choice of law provision selecting Colorado in each guaranty, California law should apply. I disagree.

Each guaranty provides in bold caps that "this guaranty shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws and decisions of the state of Colorado...." (Appendix A p. 4)

 Colorado requires resolution of conflicts under the principles set forth in Restatement (Second) of Conflict of Laws, §§ 187 and 188 (1971). *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau,* 198 Colo. 444, 601 P.2d 1369 (1979). However, those principles apply only "in the absence of an effective choice of law by the parties." *Id.;* Restatement (Second) of Conflict of Laws, §§ 187 and 188. The parties' choice of law is effective "unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." *Hansen v. GAB Business Services, Inc.,* 876 P.2d 112 (Colo. App.1994); *See Wood Bros.,* 601 P.2d 1369 n. 4. "Merely not recognizing a claim or theory of recovery is not a substantial conflict which warrants a court's rejection of a contractually designated choice of law." *Hansen,* 876 P.2d 112. Defendants fail to show any lack of reasonable basis for their choice of Colorado law or that Colorado's law is contrary to a fundamental policy of California. Accordingly, I will apply Colorado law.

### III.

*Summary Judgment Standard*

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, ad-

missions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his pleadings, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. at 2512; *Mares*, 971 F.2d at 494.

IV.

■ FBS seeks summary judgment on the grounds that there is no genuine issue of material fact that defendants are legally obligated to repay FBS pursuant to the guaranties. In opposition to FBS' summary judgment motion, defendants argue that there is a genuine dispute about the existence of a subsequent agreement modifying the guaranties which precludes summary judgment. I disagree.

By the fall of 1993, Heartland was in default under the loan documents. Heartland then sought $2 million in further financing from CVD Financial Corporation (CVD), not a party to this action. (Def.Resp. p. 8). According to defendant Kunz, during negotiations between CVD and Heartland, CVD "demanded" personal guaranties of defendants as a condition to any loan to Heartland. (Kunz Aff. ¶ 36). Defendants allege that in connection with the CVD negotiations and as a "predicate to guaranteeing the CVD loan," FBS agreed that:

1. FBS would subordinate its interest in the Term Loan collateral, including the Sigman assets in excess of $3.5 million, to the $2 million CVD loan;

2. FBS would look principally and initially to the Term Loan collateral to secure the Term Loan; and

3. after application of the $2 million CVD loan to the FBS loan balance, FBS would not permit Heartland to remain in default under the FBS Loan Documents; upon any such default, FBS would no longer advance funds under the operating Line of Credit, and would apply all funds from collections to reduce the Line of Credit Loan.

*Id.* at ¶ 38.

■ A guaranty is a collateral promise to answer for the debt or obligation of another. *Yama v. Sigman*, 114 Colo. 323, 327–28, 165 P.2d 191, 193 (1945). An unconditional guaranty is one by which the guarantor promises, without condition, payment or performance of the principal contract on default of the principal debtor. *Id.* When one enters into a guaranty to pay the debt of

another, the guarantor has the right to make the terms and to set forth the conditions upon which he assumes the burden of guaranteeing the debt. *See Yama,* 165 P.2d at 193. The extent of a guarantor's liability is measured by the language of the instrument itself. *Continental Nat'l Bk. v. Dolan,* 39 Colo.App. 16, 564 P.2d 955 (1977). Guaranty agreements are to be strictly construed in favor of the guarantor. *First Interstate Bk. of Denver, N.A. v. Colcott Partners IV,* 833 P.2d 876, 878 (Colo.App.1992). Further, when, as here, a guaranty is regular on its face, it may be presumed to have been properly executed. *See Gates v. American Nat'l Bk. of Denver,* 173 Colo. 371, 376, 479 P.2d 285, 287 (1971).

The unconditional guaranties provide, in pertinent part:

> [No] modification or waiver of any of the provisions of this Guaranty be (sic) binding upon Lender, except as expressly set forth in a writing duly signed and delivered on Lender's behalf by an authorized officer or agent of Lender.

*See e.g.* Appendix A p. 3.

"Despite a provision requiring that all modifications of a written contract must be in writing, a contract may be modified by oral agreement between the parties." *Colorado Investment Services, Inc.,* 685 P.2d 1371, 1376–77 (Colo.App.1984); *see Cordillera Corp. v. Heard,* 41 Colo.App. 537, 592 P.2d 12 (1978), *aff'd,* 200 Colo. 72, 612 P.2d 92 (1980). Thus, competent evidence of a modification, whether written or oral, would preclude summary judgment.

Fed.R.Civ.P. 56(e) states:

> A ... party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

"[G]eneralized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment. . . .

[An] affidavit contain[ing] conclusory allegations without specific supporting facts ... lacks probative value." *Thomas v. International Business Machines,* 48 F.3d 478, 485 (10th Cir.1995), *citing Stevens v. Barnard,* 512 F.2d 876, 879 (10th Cir.1975).

Defendants did not reveal the existence of the alleged "modification" or its terms in their Answer or in discovery. (Answer; Pltf.Reply p. 2). Also, defendants fail to offer evidence of when, how, where, or with whom the "modification" of the guaranties occurred. Indeed, the Kunz affidavit never mentions any "oral" modification. Further, the CVD documents the defendants rely on as corroboration for the "modification" of the guaranties do not mention the guaranties or the defendants. Moreover, there being three separate guaranties, defendants would be required to submit specific evidence of each modification. They fail to do so. Thus, I conclude, as a matter of law, that defendants have failed to put forth specific facts to raise a genuine dispute about the existence of a modification of the guaranties. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980) (party must respond with specific facts); Fed. R.Civ.P. 56(e).

*Promissory Estoppel*

Defendants argue that the "facts evidencing oral modification of the guaranties raise genuine issues of material fact as to the existence of promissory estoppel...." (Def.Resp. p. 22). For the same reasons summary judgment is not precluded upon the alleged but unsupported oral modifications, these "facts" are insufficient to preclude summary judgment on the promissory estoppel argument as well.

*Breach of duty of good faith and fair dealing*

Defendants argue that they are not liable on the guaranties because FBS violated the implied covenant of good faith and fair dealing by making additional loans to the Heartland entities when they were in default. I disagree.

In Colorado, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Ruff v. Yuma County Transp. Co.,*

690 P.2d 1296, 1298 (Colo.App.1984). Defendants' argument misses the mark, however, because the advances defendants complain about were not made under the financial transaction they guaranteed. The advances made by FBS after the Borrowers began experiencing financial difficulties were made under the line of credit note. Defendants are not obligated under the line of credit note. Neither have they guaranteed the line of credit note. Defendants' guaranty applies to the $3.5 million term note.

Defendants do not proffer evidence that the term note was in default prior to Borrowers' bankruptcy or that FBS increased the amount due under the term note. Indeed, FBS seeks $3,091,662.00, due on the term note—reduced from the original principal amount of $3.5 million. Thus, I conclude, as a matter of law, that FBS owed no duty of good faith and fair dealing to defendants on the line of credit note.

*Failure to dispose of collateral in a commercially reasonable manner*

■ Defendants seek to avoid summary judgment by claiming FBS did not dispose of the Sigman collateral in a commercially reasonable manner pursuant to § 4-9-504(3), C.R.S. (Kunz Aff. ¶ 50; Wise ¶¶ 8-12). Again, I disagree.

■ In Colorado, a guarantor is treated as a debtor for purposes of Article 9 of the Colorado Uniform Commercial Code. The protections afforded by § 4-9-504(3), Colorado Uniform Commercial Code, that collateral be disposed of in a commercially reasonable manner, are also provided to a guarantor. *May v. Women's Bk., N.A.,* 807 P.2d 1145, 1146 (Colo.1991). However, the sale of collateral is conclusively deemed commercially reasonable where such sale is done pursuant to judicial order:

A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable....

Section 4-9-507(2), C.R.S.

'Contrary to defendants' assertions, the liquidation of the Sigman collateral was pursuant to order of the United States Bankruptcy Court of the District of Colorado. (Pltf.Reply May 25, 1995 Bank. Order). Thus, the sale of the collateral is conclusively deemed commercially reasonable. § 4-9-507(2), C.R.S.

FBS seeks $3,091,662.00 as the principal amount due on the $3,500,000 term note. FBS also seeks $490,221.66 interest accrued as of November 9, 1995 computed at a per diem rate of $901.73. Defendants limited their responses to the liability issue and did not address the amount due on the guaranties. Consequently, there is no genuine dispute about these figures. Moreover, the guaranties unambiguously provide for an award of attorney fees and costs to plaintiff. (Appendix A p. 1).

Defendants have failed to demonstrate with specific facts that there exists a genuine factual issue to be tried as to their liability on the guarantied term note. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Otteson,* 622 F.2d at 519. Moreover, defendants have not met their burden of proof to demonstrate a genuine issue of material fact as to their affirmative defenses. Therefore, I will grant FBS' motion for summary judgment.

Accordingly, it is ORDERED that:

1. defendants' motion to supplement response to motion for summary judgment is GRANTED;

2. plaintiff's motion for summary judgment is GRANTED;

3. plaintiff's motion to strike demand for jury trial is DENIED as moot;

4. judgment shall enter for plaintiff and against the defendants, jointly and severally, in the principal amount of $3,091,662.00 and interest of $490,221.66 through November 9, 1995. Interest shall accrue at the per diem rate of $901.73;

5. plaintiff is awarded its reasonable attorney fees and costs to be determined upon motion and affidavit to be submitted in ten (10) days. Defendants shall have ten (10) days to respond.

## GUARANTY

For value received and in consideration of any loan, advance, or financial accommodation of any kind whatsoever heretofore, now or hereafter made, given or granted to Heartland, Inc., a Nebraska corporation; Heartland Industries, Inc., a Nebraska corporation; Heartland Distribution Group, Inc., a Nebraska corporation; Western Valley Pallets, Inc., a Nevada corporation; Western Valley Processing, Inc., a Nebraska corporation; Sand Hills Beef Corporation, a Nebraska corporation; and The Sigman Meat Company, Inc., a Colorado Corporation ("Borrower," whether one or more); by FBS Ag Credit, Inc. ("Lender"), the undersigned R. Kent Kunz unconditionally guarantees the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, and at all times thereafter, of all of the indebtedness, liabilities and obligations of every kind and nature of Borrower to Lender under the Term Note in the amount of $3,500,000 executed pursuant to that certain Loan and Security Agreement dated January 21, 1993 (the "Loan Agreement") between Borrower and Lender (all such indebtedness, liabilities and obligations being hereinafter referred to as the "Obligations"). The undersigned further agrees to pay all reasonable costs and expenses, including, without limitation, all court costs and attorneys' and paralegals' fees, and expenses paid or incurred by Lender in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against, the undersigned of all or any part of the Obligations.

The undersigned hereby agrees that, except as hereinafter provided, the undersigned's obligations under this Guaranty shall be unconditional, irrespective of (i) the validity or enforceability of the Obligations or of any promissory note or other document evidencing all or any part of the Obligations; (ii) the absence of any attempt to collect the Obligations from Borrower or any other guarantor or other action to enforce the same; (iii) the waiver or consent by Lender with respect to any provision of any instrument evidencing the Obligations, or any part thereof, or any other agreement now or hereafter executed by Borrower and delivered to Lender; (iv) the failure by Lender to take any steps to perfect and maintain Lender's security interest in, or to preserve Lender's rights to, any security or collateral for the Obligations; (v) Lender's election, in any proceeding instituted under Chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101 *et seq.*) ("Bankruptcy Code") of the application of Section 1111(b)(2) of the Bankruptcy Code; (vi) any borrowing or grant of a security interest by Borrower, as debtor-in-possession, under Section 364 of the Bankruptcy Code; (vii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender's claim(s) for repayment of the Obligations; or (viii) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

The undersigned hereby waives any requirement of diligence, presentment, demand of payment (and shall not demand that the same be made upon Borrower as a condition precedent to the undersigned's obligations under this Guaranty), filing of claims with a court in the event of receivership or bankruptcy of Borrower, protest or notice with respect to the Obligations and all demands whatsoever (and shall not demand that such protest, notice or demand be made or served on Borrower), and covenants that this Guaranty will not be discharged, except by complete performance of the obligations contained herein. Upon any default by Borrower, as provided in any instrument or document evidencing all or any part of the Obligations, Lender may, at Lender's sole election, proceed directly and at once, without notice, and notwithstanding any stay, enjoinment or other prevention of acceleration of the Obligations as against Borrower or any other party, against the undersigned to collect and recover the full amount or any portion of the Obligations, without first proceeding against Borrower or any other person, firm, or corporation, or against any security or collateral for the Obligations. Lender shall have the exclusive right to determine the application of payments and credits, if any, from the undersigned, Borrower or from

any other person, firm or corporation on account of the Obligations or of any other liability of the undersigned to Lender.

Lender is hereby authorized, without notice or demand and without affecting the liability of the undersigned hereunder to, from time to time: (i) renew, extend, accelerate or otherwise change the time for payment of, or other terms relating to, the Obligations, or otherwise modify, amend or change the terms of any promissory note or other agreement, document or instrument now or hereafter executed by Borrower or any other guarantor of the Obligations and delivered to Lender; (ii) accept partial payments on the Obligations; (iii) take and hold security or collateral for the payment of the Obligations guaranteed hereby, or for the payment of this Guaranty, or for the payment of any other guarantees of the Obligations or other liabilities of Borrower, and exchange, enforce, waive and release any such security or collateral; (iv) apply such security or collateral and direct the order or manner of sale thereof as in Lender's discretion Lender may determine; and (v) settle, release, compromise, collect or otherwise liquidate the Obligations, any other guaranty of the Obligations, and any security or collateral for the Obligations or for any such guaranty, in any manner, without affecting or impairing the obligations of the undersigned hereunder.

At any time after an Event of Default under the Loan Agreement, Lender may, in Lender's sole discretion, without notice to the undersigned and regardless of the acceptance of any security or collateral for the payment hereof, appropriate and apply toward the payment of the Obligations (i) any indebtedness due or to become due from Lender to the undersigned, and (ii) any moneys, credits or other property belonging to the undersigned, at any time held by or coming into the possession of Lender or any affiliate of Lender.

The undersigned hereby assumes responsibility for keeping itself informed of the financial condition of Borrower, and any and all endorsers and/or other guarantors of any instrument or document evidencing all or any part of the Obligations and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof that diligent inquiry would reveal, and the undersigned hereby agrees that Lender shall have no duty to advise the undersigned of information known to Lender regarding such condition or any such circumstances. In the event Lender, in Lender's sole discretion, undertakes at any time or from time to time to provide any such information to the undersigned, Lender shall be under no obligation (i) to undertake any investigation not a part of Lender's regular business routine; (ii) to disclose any information which, pursuant to accepted or reasonable commercial finance practices, Lender wishes to maintain confidential; or (iii) to make any other or future disclosures of such information or any other information to the undersigned.

The undersigned consents and agrees that Lender shall be under no obligation to marshall any assets in favor of the undersigned or against or in payment of any or all of the Obligations. The undersigned further agrees that, to the extent that Borrower makes a payment or payments to Lender, or Lender receives any proceeds of collateral, which payment or payments or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to Borrower, Borrower's estate, trustee, receiver or any other party, including, without limitation, the undersigned, under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof which have been paid, reduced or satisfied by such amount shall be reinstated and continued in full force and effect as of the date of such initial payment, reduction or satisfaction occurred, provided no interest shall have accrued for such period.

Until the Obligations shall have been paid in full, the undersigned shall have no right of subrogation and hereby waives any right to enforce any remedy which Lender now has or may hereafter have against Borrower, any endorser or any other guarantor of all or any part of the Obligations, and the undersigned hereby waives any benefit of, and any right to participate in, any security or collateral

given to Lender to secure payment of the Obligations or any other liability of Borrower to Lender. The undersigned further agrees that any indebtedness now or hereafter owed by Borrower to the undersigned and any and all claims of the undersigned against Borrower, any endorser or any other guarantor of all or any part of the Obligations, or against any of their respective properties, whether arising by reason of any payment by the undersigned to Lender pursuant to the provisions hereof, or otherwise, shall be subordinate and subject in right of payment to the prior payment, in full, of all principal and interest, all reasonable costs of collection (including, without limitation, attorneys' and paralegals' fees and expenses) and any other liabilities or obligations owing to Lender by Borrower which may arise either with respect to or on any note, instrument, document, item, agreement or other writing heretofore, now or hereafter delivered to Lender. The undersigned also waives all setoffs and counterclaims and all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty. The undersigned further waives all notices of the existence, creation or incurring of new or additional indebtedness, arising either from additional loans extended to Borrower or otherwise, and also waives all notices that the principal amount, or any portion thereof, and/or any interest on any instrument or document evidencing all or any part of the Obligations is due, notices of any and all proceedings to collect from the maker, any endorser or any other guarantor of all or any part of the Obligations, or from anyone else, and to the extent permitted by law, notices of exchange, sale, surrender or other handling of any security or collateral given to Lender to secure payment of the Obligations.

No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lender of any right or remedy shall preclude any further exercise thereof; nor shall any modification or waiver of any of the provisions of this Guaranty be binding upon Lender, except as expressly set forth in a writing duly signed and delivered on Lender's behalf by an authorized officer or agent of Lender. Lender's failure at any time or times hereafter to require strict performance by Borrower or the undersigned of any of the provisions, warranties, terms and conditions contained in any promissory note, security agreement, agreement, guaranty, instrument or document now or at any time or times hereafter executed by Borrower or the undersigned and delivered to Lender shall not waive, affect or diminish any right of Lender at any time or times hereafter to demand strict performance thereof, and such right shall not be deemed to have been waived by any act or knowledge of Lender, Lender's agents, officers or employees, unless such waiver is contained in an instrument in writing signed by an officer or agent of Lender and directed to Borrower specifying such waiver. No waiver by Lender of any default shall operate as a waiver of any other default or the same default on a future occasion, and no action by Lender permitted hereunder shall in any way affect or impair Lender's rights or the obligations of the undersigned under this Guaranty. Any determination by a court of competent jurisdiction of the amount of any principal and/or interest owing by Borrower to Lender shall be conclusive and binding on the undersigned irrespective of whether the undersigned was a party to the suit or action in which such determination was made.

The undersigned agrees that this Guaranty shall continue in full force and effect until a written revocation hereof, specifically referring hereto, signed by the undersigned, is actually received by Lender, or until the Obligations are satisfied in full. Such revocation shall not affect the right and power of Lender to enforce rights arising prior to receipt thereof. If, in reliance on this Guaranty, Lender grants loans or takes other action after the revocation by the undersigned but prior to the receipt by Lender of said written notice, the rights of Lender with respect thereto shall be the same as if such revocation had not occurred. In addition, this Guaranty shall terminate when the principal amount outstanding on the Term Loan, after all Term Loan Advances are made, is reduced by $1,000,000, *and* Borrower's con-

solidated Tangible Net Worth as of the date thus Guaranty is increased by $1,000,000.

This Guaranty shall be binding upon the undersigned and upon the successors and assigns of the undersigned and shall inure to the benefit of Lender's successors and assigns. All references herein to Borrower and to the undersigned shall be deemed to include their respective successors and assigns. Borrower's successors and assigns shall include, without limitation, a receiver, trustee of debtor-in-possession of or for Borrower. All references to the singular shall be deemed to include the plural where the context so requires.

THIS GUARANTY SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS AND DECISIONS OF THE STATE OF COLORADO, AND THE UNDERSIGNED AGREES TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT WITHIN ARAPAHOE COUNTY, COLORADO AND WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS UPON IT, AND CONSENTS THAT ALL SERVICE OF PROCESS BE MADE BY REGISTERED MAIL DIRECTED TO THE UNDERSIGNED AT THE ADDRESS INDICATED BELOW AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETED THREE (3) DAYS AFTER THE SAME SHALL HAVE BEEN POSTED AS AFORESAID. THE UNDERSIGNED HEREBY APPOINTS RICHARD O. CAMPBELL OF THE LAW FIRM OF DORSEY & WHITNEY, OR SUCH OTHER ATTORNEY OF THE LAW FIRM OF DORSEY & WHITNEY AS RICHARD O. CAMPBELL MAY APPOINT, AS THE UNDERSIGNED'S AGENT FOR THE PURPOSE OF ACCEPTING SERVICE OF PROCESS WITHIN THE STATE OF COLORADO AND LENDER AGREES PROMPTLY TO FORWARD, BY CERTIFIED MAIL, ANY PROCESS SO SERVED UPON SAID AGENT TO THE UNDERSIGNED AT THE UNDERSIGNED'S ADDRESS SET FORTH BELOW. THE UNDERSIGNED

WAIVES AT THE OPTION OF LENDER, TRIAL BY JURY, WAIVES ANY OBJECTION BASED ON *FORUM NON CONVENIENS* AND WAIVES ANY OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER AND CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT. NOTHING IN THIS PARAGRAPH SHALL AFFECT THE RIGHT OF LENDER TO SERVE LEGAL PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION OR PROCEEDING AGAINST THE UNDERSIGNED OR THE UNDERSIGNED'S PROPERTY IN THE COURTS OF ANY OTHER JURISDICTION.

Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

IN WITNESS WHEREOF, this Guaranty has been duly executed by the undersigned this 21st day of January, 1993.

Acknowledged and agreed to
this 21st day of January, 1993:

FBS Ag Credit, Inc.
P.O. Box 3937
Englewood, Colorado 80155

By ————

 Its ————